## STATE v. WARD.

No. 29173.   Oct. 21, 1941.

*118 P. 2d 216.*

Mac Q. Williamson, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for plaintiff in error.

Babb & Babb, of Poteau, and T. H. Ottesen, of Okemah, for defendant in error.

RILEY, J.   This is an appeal from a judgment against the State of Oklahoma in an action filed against the state pursuant to House Joint Resolution No. 51 (ch. 183, S. L. 1933).

The action was commenced August 9, 1933. Defendant demurred to plaintiff's petition. The demurrer was sustained by the trial court, and plaintiff appealed. The order sustaining the demurrer was reversed. Ward v. State, 176 Okla. 368, 56 P. 2d 136.

By section 1, ch. 183, supra, plaintiff was authorized to bring suit against the state to recover any gross production or other taxes which may have been illegally levied and collected from him for the years 1917, 1918, 1919, and other years, and venue was fixed for said proposed action in Oklahoma county.

In his petition plaintiff claimed only for alleged illegal gross production taxes levied and collected during the years 1917 to 1926, inclusive; that said taxes were paid for him by David Ward, his

guardian, during said time, while plaintiff was a minor. He asserts that the gross production taxes so levied and collected were illegal and void because plaintiff was a Choctaw Indian, and that the land from which the oil, giving rise to the tax, was produced was his allotment, and under the Atoka Agreement with the Choctaw and Chickasaw Tribes of Indians, June 28, 1898 (ch. 517, 30 Stat. L. 495-505), the land and premises allotted to plaintiff, including the oil produced therefrom, representing his royalty, was not taxable.

After failure of defendant's demurrer became effective, answer was filed in the trial court. Therein defendant admits all of plaintiff's allegations with respect to plaintiff's status as a member of the Choctaw Indian Tribe; the allotment of the land from which the oil upon which the tax in question was paid on plaintiff's royalty interest in said land, and that said royalty interest was not, under the law existing at the time the taxes were paid, subject to the payment of gross production tax to the state; that plaintiff had by and through his guardian paid gross production taxes in the amounts and at the times alleged in plaintiff's petition.

Liability is denied because:

(a) The joint resolution under which plaintiff claims authority to sue the state is a special or local law and was enacted in violation of section 32, art. 5, of the Constitution, which requires publication of notice of intended introduction of such bills, which was not done.

(b) The payments sought to be recovered were made voluntarily and not under duress, coercion, or compulsion.

(c) The action is barred by the general statute of limitation, sections 185, 186, C.O.S. 1921; §§ 101, 102, O. S. 1931; 12 Okla. Stat. Ann. §§ 95 and 96.

(d) The action is barred by sections 9971 and 9973, C.O.S. 1921; §§ 12665 and 12666, O. S. 1931; 68 Okla. Stat. Ann. §§ 263 and 223.

(e) The action is barred as to the last seven items of payment made after the effective date, April 2, 1925, because remedy there provided was not pursued.

A stipulation of facts was entered into covering the allegations of plaintiff's petition admitted by defendant and the fact that the joint resolution authorizing the action against the state was without publication of notice of intention to introduce said measure.

It was also stipulated that the money collected had been transferred to the state treasury and apportioned and expended in the maintenance of the state government and its political subdivisions long prior to the passage of the act, and long before plaintiff attained his majority, which it is agreed was on January 31, 1927.

Evidence was taken concerning claims made for refund of some of the payments, particularly those made after April 2, 1925.

Judgment was entered for plaintiff for the full amount sued for, and defendant appeals.

We have a case where the state admittedly collected and received and still retains $13,520.28 in gross production taxes from the royalty interest in plaintiff's land which was not at the time liable for payment of any part of the tax imposed and collected, but was exempt therefrom under the Atoka Agreement. Carpenter v. Shaw, Auditor, 280 U. S. 363, 50 S. Ct. 121, 74 L. Ed. 478.

Defendant, for reversal, presents five propositions:

The first is that House Joint Resolution No. 51, under authority of which this action is brought, was enacted in violation of section 59, art. 5, of the Constitution, and is an invalid special law.

This proposition is not well taken under the rule announced in State v. Fletcher, 168 Okla. 538, 34 P. 2d 595. Therein it was held that Joint Resolu-

tion No. 20, art. 2, ch. 65, S. L. 1931, in substance the same as the instant enactment, did not violate section 59, art. 5, of the Constitution.

It is true that in Jack v. State, 183 Okla. 375, 82 P. 2d 1033, we held that the act there in question, article 18, ch. 65, S. L. 1935, violated section 59, art. 5, of the Constitution. But, as noted in the opinion, the act there involved not only authorized an action against the state, but also undertook to authorize recovery of damages, if any, sustained by the parties authorized to bring the action, by reason of the failure and neglect of the State Highway Department and its officers, servants, agents, and employees to properly maintain a state highway at a given point or place. It was on that account that the act was held to violate section 59, art. 5, of the Constitution. The distinction between the facts in that case and those in State v. Fletcher, supra, is pointed out in Jack v. State, supra, as follows:

"Considerable reliance is placed upon our opinion in the case of State v. Fletcher, 168 Okla. 538, 34 P. 2d 595. There is a controlling difference between the facts in that case and the facts in the instant case. In that case the liability was fixed by express provisions of the Constitution which were in full force and effect long prior to the accrual of the damage. In the instant case it is sought to create the liability by special act. In that case it was held that a special act authorizing a suit against the state caused by the drainage of sewage from the Western Oklahoma Tuberculosis Sanatorium through the premises of the plaintiff, Fletcher, was not violative of the provisions of section 51 or section 52 of art. 5, or section 59, art. 5, or of subdivision (z) of section 46, art. 5, of the Constitution, since these provisions were not enacted for the benefit of the sovereign state but for the benefit of the individual citizens of the state. It is at once apparent that a general law could not have been made applicable in that case. It is evident that· the special act did not operate to grant to Fletcher any special right or privilege not enjoyed by others under like circumstances, but merely afforded to him a means of enforcement of the rights and privileges granted him by the Constitution. It was held, in effect, in that case that the Legislature had waived, in behalf of the state, the defense of the statute of limitations, and it is insisted that, by the same process of reasoning, in the instant case, . . . the Legislature has waived the immunity of the state from liability for the torts of its agents. We may concede that the language used in article 18, chap. 65, S. L. 1935, is broad enough to disclose a legislative intent not only to waive the immunity of the state from suit, but to assume liability for such negligence of its agents as might be established upon a trial of the cause. We may also concede that if the act did not contravene a positive provision of the Constitution, we would be forced to give it such construction and effect. The sole issue in the instant case is the constitutionality of the act. What we have said sufficiently distinguishes this case from the Fletcher Case."

The result is to say that an act which authorizes an individual to sue the state for and on account of an alleged specific pre-existing obligation is not a special act covering a matter where a general act could be made applicable.

In the Jack Case we overruled one of the reasons, but not the principal one, for holding acts of this class not violative of section 59, art. 5, of the Constitution.

That the claim of plaintiff in the present action is a pre-existing obligation is made plain in Ward v. Board of County Com'rs of Love County, 253 U. S. 17, 40 S. Ct. 419, 64 L. Ed. 751.

Therein it is pointed out that the right of members of the Choctaw Tribe of Indians to have their allotted lands exempted from taxation was guaranteed under the provisions of the Act of Congress of June 28, 1898, c. 517, 30 Stat. 495 (the Atoka Agreement), and that the Act of June 16, 1906, c. 3335, 34 Stat, 267, enabling Oklahoma to become a state made it plain that no impairment of the right pertaining to the Indians was intended.

It was also pointed out that the State of Oklahoma included in its Constitution a provision exempting from taxa-

tion such property as may be exempt by reason of treaty stipulations existing between the Indians and the United States Government, or by federal laws, during the force and effect of such treaties or federal laws (section 6, art. 10, of the Constitution).

It was further pointed out that in Choate v. Trapp, 224 U. S. 665, 32 S. Ct. 565, 56 L. Ed. 941, and other cases cited, it had been held that such exemption was a vested right which Congress could not repeal consistently with the 5th Amendment, and that it was binding on the taxing authorities, of Oklahoma. In the opinion the court stated:

"It is a well-settled rule that 'money got through imposition' may be recovered back; and, as this court has said on several occasions, 'the obligation to do justice rests upon all persons, natural and artificial, and if a county obtains the money or property of others without authority, the law, independent of any statute, will compel restitution or compensation.' "

And:

"To say that the county could collect these unlawful taxes by coercive means, and not incur any obligation to pay them back, is nothing short of saying that it could take or appropriate the property of these Indian allottees arbitrarily and without due process of law. Of course, this would be in contravention of the 14th Amendment, which binds the county as an agency of the state."

The second proposition is that the joint resolution is invalid and void for the reason that no notice of the intended introduction thereof was published as required by section 32, art. 5, of the Constitution.

Plaintiff contends that question may not be raised because it might have been but was not presented in the former appeal. In the former appeal, Ward v. State, supra, it was expressly stated that this question was not before the court. It was not and could not have been properly considered. A demurrer does not raise a question of fact.

The question whether notice was published was one of fact. It did not affirmatively appear from the petition that no notice of intention to introduce the resolution was published. The question could not properly have been raised by demurrer. It could be properly raised only by answer unless the petition affirmatively showed failure to publish the notice. It is raised by answer, and the stipulation of facts shows that no such notice was given or published. The question now being raised, we are called upon to determine whether the resolution is such a special or local act or measure as to require publication of the notice.

It has often been said by this court, in construing provisions of the Constitution concerning special or local acts, that special laws are not all local, but all local laws are special. Not every law which applies to an individual or class of individuals is a local law within the meaning of section 32, art. 5, of the Constitution, which requires publication of notice of intention of its introduction. In Coyle v. Smith et al., 28 Okla. 121, 113 P. 944, Mr. Justice Williams, speaking for the court, said:

"This notice was required to be published where laws applying solely to particular individuals, or to any particular locality, where sought to be passed for the benefit or prejudice of such locality, in order that they might have an opportunity to appear before the Legislature and remonstrate against the passage of such law if they did not think it was wise. But when such law applies to every part of the state, locating the capital for the entire state, the very fact that it locates it at a particular spot does not make it a special law."

It may be said, then, that the purpose of this provision of section 32, art. 5, was to prevent introduction and passage of acts by the Legislature which would prejudice a certain locality, or one that would benefit a certain locality, without notice of intention to present such proposed measure and thereby afford opportunity to object.

The action authorized by the act here involved is against the state and not against any particular locality or subdivision of the state. The judgment obtained, if and when paid, must be paid by the state. No particular locality or subdivision of the state will be called upon to pay any part of the judgment. The act is not for the benefit or to the prejudice of any locality. It applies to every part of the state so far as any prejudicial effect it may be supposed to have. It is not within the purview of section 32, art. 5, of the Constitution.

The third proposition is that plaintiff cannot recover because the gross production taxes in question were paid voluntarily and not under protest, or under duress, coercion, or compulsion.

The difference between the taxes involved in Ward v. Board of County Com'rs of Love County, supra, and the taxes here involved is that in Ward v. Love County, the taxes were ad valorem taxes assessed and levied and collected by the county taxing officers against the land itself. The taxes here involved are gross production taxes levied by the state against the royalty interest in the land reserved by the owner in an oil and gas lease.

The Ward Case, supra, was commenced long before 1918. We say that because the decision of this court in that case was first entered June 11, 1918. See 68 Okla. 287, 173 P. 1050. It had its origin before the board of county commissioners of Love county. It was appealed to the district court and from there to this court. It must have had its origin before any of the taxes here involved accrued. But the Indians were contesting the rights of the state to tax their allotments before the date of Ward v. Love County, supra. Choate v. Trapp, Auditor, 224 U. S. 665, 32 S. Ct. 565, 56 L. Ed. 941, was decided in the Supreme Court of the United States before Ward v. Love County was decided by this court.

The grounds upon which Ward asserted that the taxes involved in Ward v. Love County were paid under coercion or compulsion were set forth in the opinion. 68 Okla. 287, 173 P. 1050. This court held the allegations insufficient to constitute coercion or compulsion. The case was appealed to the Supreme Court of the United States, where it was held in substance that the county, having demurred to the petition, thereby admitted the truth of said allegations, and that court reversed this court. Ward v. Love County, 253 U. S. 17, 64 L. Ed. 751. Therein it was said:

"The facts set forth in the petition, all of which were admitted by the demurrer wherein the county elected to stand, make it plain, as we think, that the finding or decision that the taxes were paid voluntarily was without any fair or substantial support. The claimants were Indians, just emerging from a state of dependency and wardship. Through the pending suits and otherwise they were objecting and protesting that the taxation of their lands was forbidden by a law of Congress."

Again, in Carpenter v. Shaw, Auditor, 280 U. S. 363, 50 S. Ct. 121, 74 L. Ed. 478, where gross production tax was involved, it is said:

"The Supreme Court of Oklahoma also rested its denial to petitioners of the right to recover the 1926 tax upon the ground that, having failed to pay the tax for the year when due, they were barred by the provisions of sections 9971 and 9973 of the Compiled Oklahoma Statutes for 1921. Under these sections, relief by injunction against the collection of any tax is forbidden and a suit to recover a tax alleged to be illegally assessed is allowed only if paid 'at the time and in the manner provided by law.' But the petitioners' allegations, admitted on demurrer, are that the tax was paid under duress and compulsion to prevent the issue of respondent's warrant for its collection, to prevent the stopping by respondent of further royalty payments to them, and to prevent the accumulation of statutory penalties. These allegations are sufficient to bring the case within the ruling of this court in Ward v. Love County, 253 U. S. 17, 64 L. Ed. 751, 40 Sup. Ct. 419, that a denial by a state court of a recovery of taxes exacted in violation of the laws or Constitution of the United States by compulsion is itself in contravention of the 14th Amendment. The judgment be-

low will be reversed, and the cause remanded for further proceedings not inconsistent with this opinion."

The allegations of plaintiff's petition herein are substantially the same. The ex-guardian testified in substance that he paid the taxes to avoid penalties; because he did not want to violate the law, and "did not want his stuff tied up." In fact, penalty was paid on a number of the quarterly statements, in one case as much as $53. He also testified that he paid on the advice of the county judge. It is true that no warrant had been issued, and that no direct threat had been made to levy on or sell the royalty interest in the land.

Where taxes have been paid on lands or property belonging to Indians which were exempt from taxation under treaty stipulations with the Indians or under federal statutes, the rule is now well established that the fact that the Indian paid the taxes voluntarily and without protest could not make the taxes legal. Board of County Com'rs of Osage County v. United States, 64 F. 2d 775; United States v. Dewey County, 14 F. 2d 784, 26 F. 2d 434 (C.C.A.); United States v. Board of County Com'rs of Comanche County, 6 Fed. Supp. 401; United States v. Nez Perce Co., 95 F. 2d 232.

In Board of County Commissioners of Osage Co. v. United States, supra, it was said:

"In a suit to cancel county assessments against Indian lands, failure to comply with state statute by paying alleged illegal tax and suing to recover it constituted no defense."

In United States v. Nez Perce Co., supra, it was said:

"The Indian testified that he paid the taxes because they were levied against his property. He did not protest the payment because, he says, it would have done no good. There is no other evidence on the subject, and we are unable to agree that the taxes were voluntarily paid."

Having in mind the holding of the Supreme Court of the United States and other federal courts by which we are bound in matters affecting Indian property exempt from taxation under treaties with the Indians and federal statutes, we cannot say that the taxes here involved were paid voluntarily.

The fourth proposition is that failure to pursue the remedy afforded by section 12665, O. S. 1931, 68 Okla. Stat. Ann. § 263, precludes plaintiff's recovery. This question is fully covered by the United States cases cited under the third proposition.

The fifth proposition is that as to payments made after April 2, 1925, plaintiff's right of recovery was barred prior to April 25, 1933, the date the joint resolution authorizing this suit became effective, because more than three years had elapsed after the remedy provided by section 3, ch. 20, S. L. 1925, and under section 52, art. 5, of our Constitution, the Legislature could not restore the right thus barred.

This proposition has merit. It will be observed that section 3, ch. 20, S. L. 1925, effective April 2, 1925, for the first time provided a specific remedy or method by which gross production taxes illegally or erroneously levied, and collected from restricted Indian lands exempt from taxation, could be refunded. It provides:

"In all cases of overpayment, duplicate payment or payment made in error on account of the production being derived from restricted Indian lands and therefore exempt from taxation, the State Auditor, by and with the approval of the State Board of Equalization, after an audit by the State Examiner and Inspector, is authorized to refund any such overpaid, duplicate or erroneously paid gross production taxes out of any gross production tax funds in his hands from the same county from which the original tax was derived and not apportioned to the State Treasurer to be distributed as provided by law."

It may be noted that said provision does not specifically provide for refund of such taxes paid prior to the passage of said act. Plaintiff, apparently believing said act retroactive, made application thereunder for refund of all the taxes here involved, those paid before

as well as those paid after April 2, 1925. His application was denied as to all. As to that part paid after April 2, 1925, the refund was denied apparently upon the theory that payment was made voluntarily and without protest.

As to that part of the tax paid before April 2, 1925, the refund was denied apparently upon the theory that the 1925 act was not retrospective in effect and did not apply to taxes paid before the law became effective as well as because said taxes were paid voluntarily and without protest. This is indicated by opinions given by the Attorney General to the State Examiner and Inspector about the time the claims for refund were being audited by the State Examiner and Inspector and were being considered by the State Board of Equalization.

Plaintiff attained his majority January 31, 1927. He did not file his claim for refund until about December 16, 1930, more than five years after the act became effective and about three years and ten months after he attained his majority. No further proceedings were had to recover until this action was filed August 9, 1933. As to that part of the tax paid after April 2, 1925, that act gave plaintiff a remedy. He failed to pursue the remedy until the statute of limitations had run against his claim.

In Carter, State Auditor, v. Collins, 174 Okla. 4, 50 P. 2d 203, it is held:

"An action brought by a claimant under section 3, chapter 20, S. L. 1925 (section 12442, O. S. 1931), to enforce payment of claim for refund of taxes paid prior to the passage of the act, is, regardless of the stated form of the action, an action for the recovery of money, and is a civil action within the meaning of sections 4, 11, 13, 98 and 101 O. S. 1931."

And:

"In such an action the defense of the statute of limitation may be asserted and relied upon, and when such action is not commenced within the period prescribed in section 101, after the cause of action has accrued, the action will be held to be barred under sections 98, 101, and 108, O. S. 1931."

Therefore, before the effective date of Joint Resolution No. 51, under the authority of which this action is brought, plaintiff's claim against the state as represented by payments of taxes after April 2, 1925, was barred by the statute of limitations.

The right of plaintiff below could not be revived by the Legislature because prohibited by section 52, art. 5, of the Constitution, which provides:

"The Legislature shall have no power to revive any right or remedy which may have become barred by lapse of time, or by any statute of this state. After suit has been commenced on any cause of action, the Legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

But as to that part of the tax paid prior to April 2, 1925, section 3, ch. 20, S. L. 1925, had no application.

In Carter v. Collins, supra, it is indicated that section 3 of said act was not intended to be retroactive. We did not pass upon that question. We must now consider that question. As heretofore stated, the Attorney General took the view that said section was not retroactive and had no application to taxes paid prior to its effective date. In this we think he was correct.

In Good et al. v. Keel et al., 29 Okla. 325, 116 P. 777, it is held:

"Statutes are to be construed as having a prospective operation unless the purpose and intention of the Legislature to give them a retrospective effect is expressly declared or is necessarily implied from the language used. In every case of doubt the doubt must be resolved against the retrospective effect."

In Adair v. McFarlin et al., 28 Okla. 633, 115 P. 787, the court holds:

"Generally, a statute will be construed as applying to conditions that may arise in the future. An act will not be given a retrospective operation unless the intention of the Legislature that

it shall so operate is unequivocally expressed."

See, also, Schaff, Rec., v. Rea, Co. Treas., 103 Okla. 62, 229 P. 472; Franklin v. Sovereign Camp W. O. W., 145 Okla. 159, 291 P. 513.

Tested by the rule above, it appears clear that the language of section 3, ch. 20, S. L. 1925, permits no other construction except that it was to apply to refunds payable in cases of overpayment, duplicate payment, or erroneous payment of taxes on Indian lands, not subject to taxation, in the future, and not to prior payments. As to such prior payments, the act of 1925 afforded plaintiff no remedy.

Section 3, ch. 20, S. L. 1925, not being retroactive, plaintiff had no right thereunder to sue to recover taxes paid prior to the effective date of said act. He could not sue the state because the state had not consented thereto. He could not sue the State Auditor because, as stated, the act was not retroactive. The action of the State Board of Equalization in denying refund as to such prior payment was correct and sustainable because the act referred to did not apply to such prior payments, but was not sustainable upon the ground that the payments were voluntarily made and not under duress or coercion. Therefore, the time when plaintiff was first given an effective remedy as against payments made prior to April 2, 1925, was when the joint resolution here involved became effective, viz., April 25, 1933.

Where the state cannot be sued without its consent, a statute of limitation does not begin to run in its favor until it has consented to be sued. 59 C. J. 320.

In Fletcher v. State, supra, there is language asserting in effect that the state may waive the statute of limitations by an act permitting suit against the state. But it is our present view that the statements referred to in the Fletcher Case were obiter dictum, and that the true reason for holding that the claim of Fletcher against the state was not barred by limitation was that, although the state was obligated to compensate the claimant, he was without remedy, because he could not sue the state, until the passage of the permissive resolution. This being true, the statute of limitation did not begin to run against him until the effective date of the resolution authorizing the suit against the state.

The same rule applies in the instant case as applied to payment of the taxes in question prior to April 2, 1925.

It follows that as to the several items paid after April 2, 1925, amounting to $1,533.78 in all, plaintiff was not entitled to recover.

The judgment entered below is reversed and the cause is remanded to the trial court, with directions to enter judgment for plaintiff in the sum of $11,986.50.

WELCH, C. J., CORN, V. C. J., and BAYLESS, HURST, and DAVISON, JJ., concur. OSBORN, GIBSON, and ARNOLD, JJ., concur in part, dissent in part.

---

GIBSON, J. (concurring in part, and dissenting in part). I agree with the majority opinion insofar as it directs the entry of a judgment in favor of the plaintiff for the taxes paid prior to April 2, 1925, but I disagree as to that part which denies the plaintiff recovery of the several items of taxes paid subsequent to said date. In my opinion chapter 20, S. L. 1925, did not afford the plaintiff a remedy for the collection of the taxes paid subsequent to that date, and the act, not having afforded an adequate, efficient remedy, could not bar plaintiff's action subsequently instituted pursuant to House Joint Resolution No. 51, S. L. 1933.

It should be noted that chapter 20, S. L. 1925, provides no procedure for the taxpayer to follow in seeking a refund. The Auditor is authorized to refund the tax only on approval of the Board of Equalization. Until the board's approval is forthcoming, he is under no clear statutory duty to pay out the money. On the board's approval the Auditor's duty is clear, and the taxpayer could by man-

damus require him to perform his statutory duty. The board's functions thereunder appear to be discretionary. If so, the board's approval could not be forced by mandamus, and on its refusal to approve, the taxpayer was afforded no remedy under the act. The act actually gave him no remedy against the state by suit. After the duty of the Auditor to pay became clear by reason of the approval of the claim by the board, then the statute of limitations would commence immediately to run. If the board should disapprove the claim, the taxpayer would be without remedy and his claim could only lay dormant until the state should recognize it and provide a remedy, as was done in this instance by the joint resolution. An adequate remedy is a remedy which is equally beneficial, speedy, and sufficient. State v. Guinotte, 156 Mo. 513, 57 S. W. 281, 50 L.R.A. 787. The fact that the board at some future and indefinite time might see fit to approve a refund could constitute no more than a partial remedy. As said in Sumner v. Staton, 151 N. C. 198, 65 S. E. 902, "an adequate remedy is not a partial remedy. It is a full and complete remedy, and one that is accommodated to the wrong which is to be redressed by it."

The act contained the further limitation on the authority of the Auditor to refund the taxes in that such refund was required to be made "out of any gross production tax funds in his hands from the same county from which the original tax was derived and not apportioned to the State Treasurer to be distributed as provided by law."

In my opinion the 1925 act did not afford an adequate remedy, and so the joint resolution of 1933 constituted the first remedy available to plaintiff for recovery, not only of the payments made prior to 1925, but also the payments made thereafter.

OSBORN and ARNOLD, JJ., concur in these views.