Kenneth WICKHAM, Jr. and Nannette Crane Wickham, Appellants,

v.

GULF OIL CORPORATION, Gasanadarko, Ltd., and Inexco Oil Company, Appellees.

No. 52871.

Supreme Court of Oklahoma.

Jan. 27, 1981.

Thomas J. Kenan, George, Kenan, Robertson & Lindsey, Oklahoma City, for appellants.

Michael C. Smith, Tulsa, for appellee Gulf Oil Corp.

McAfee, Taft, Mark, Bond, Rucks & Woodruff by Judson S. Woodruff, Philip D. Hart, Oklahoma City, for appellees Gasanadarko, Ltd. and Inexco Oil Co.

HARGRAVE, Justice.

In 1967, Kenneth Wickham owned 2,552 acres of land scattered over nine miles in nine sections in Roger Mills County, Oklahoma. Mr. Wickham was an incompetent and had as his guardian Charles Hamilton. Mr. Hamilton, acting on behalf of Mr. Wickham, agreed to lease to Gulf Oil Corporation (Gulf Oil), co-appellee, the 2,552 acres for oil and gas purposes and executed on November 8, 1967, in favor of the appellee, a ten-year primary term oil and gas lease. Pursuant to this lease, Gulf Oil assigned undivided interests in the property to Gasanadarko, Ltd. (Gasanadarko) and to Inexco Oil Company (Inexco), co-appellees.

In 1969, Mr. Wickham died and his mineral interests in the 2,552 acres were acquired by devise by his widow, Nannette Crane Wickham, and his son, Kenneth Wickham, Jr., the appellants.

In 1977, during the final year of the primary term of the appellees' lease but before any drilling activities had been commenced on the leased lands, the Oklahoma Legislature enacted Enrolled Senate Bill No. 7 to amend the Oklahoma Spacing Law, 52 O.S.1971, § 87.1. While the bill made two major changes, only one, Section 87.1(b) is involved in this litigation. Section 87.1(b) states:

In case of a spacing unit of one hundred sixty (160) acres or more, no oil and/or gas leasehold interest outside the spacing unit involved may be held by production from the spacing unit more than ninety (90) days beyond expiration of the primary term of the lease. 52 O.S.Supp.1980 § 87.1(b).

After Senate Bill No. 7 was enacted on May 27, 1977, but before the primary term of the lease expired in November, the appellees began drilling a well located in Section 26, 15 North, 23 West, one of the nine sections named in the lease. Although the lease expired before the completion of the drilling of the well, the lease contained provisions that allowed the lessee appellees "the right to drill to completion with reasonable diligence and dispatch (1) any well commenced within the terms of this lease ..." and that "[i]f oil, gas or any other minerals ... be found in paying quantities in any such well, this lease shall continue and be in force with like effect as if such well had been completed within the [primary term] ...."

More than ninety days after the expiration of the primary term of the lease, the Oklahoma Corporation Commission, on application of the appellants, held a hearing on March 30, 1978, and issued Order No. 139580 which established Section 26–15N–23W as a 640 acre drilling and spacing unit for the production of gas and gas condensate from the sands or formations in which the appellees' well was being completed.

Pursuant to this order, Mrs. Wickham and her son demanded that the appellee oil companies execute and deliver to them a release of all interests in the lands named in the November 8, 1967, lease except Section 26–15N–23W. The appellees refused and thereby allegedly caused, the appellants contend, a cloud on the appellants' title to the mineral interests in the leased property. Thereupon the Wickhams brought an action on June 8, 1978, in the District Court of Roger Mills County, Oklahoma, asking that title to the 1,912 acres of leased land lying outside of the established spacing unit (Section 26–15N–23W) be quieted in their favor; that they be given possession of the

1,912 acres; and that the appellees' oil and gas interests in the 1,912 acres be adjudged to have expired. The Wickhams grounded their petition on the fact that more than ninety days had elapsed since the primary term of the 1967 lease had expired and that Senate Bill No. 7 prohibited the holding by production of any lands outside the 640 acre spacing unit in which the appellees' well was located after such a ninety day period.

The appellee oil companies demurred to the appellants' petition, Gasanadarko and Inexco demurring generally and Gulf Oil demurring specially. Gulf Oil alleged that Section 87.1(b), if applied to the Corporation Commission's order of March 30, 1978, and to the appellees' leasehold interests created prior to the Section's enactment, would violate both State and Federal Constitutional provisions which prohibit the enactment of any law which impairs contractual obligations. U.S.Const. Art. I, § 10; Okla.Const. Art. II, § 15.

On August 22, 1978, at the hearing on the demurrers, the appellees also advanced the argument that retroactive application of Senate Bill No. 7 would violate the due process clauses of the State and Federal Constitutions. The trial judge, the Honorable Charles M. Wilson, sustained the demurrers and granted the appellants twenty days in which to amend their petition. Upon the appellants' failure to amend, the trial judge, in an order dated October 16, 1978, dismissed the case

> on the ground that Section 87.1(b) ...,
> which became effective May [27], 1977
> ... was not applicable to oil and gas
> leases already existing at the time such
> statute became effective, or if applicable
> to such leases was unconstitutional and
> void insofar as made applicable to such
> leases.

Whereupon the appellants on October 17, 1978, perfected an appeal to this Court. The appellants' first contention on appeal is that the Oklahoma Legislature intended the provisions of Senate Bill No. 7 to apply retrospectively to its date of enactment to oil and gas leases such as the 1967 lease involved in this litigation—oil and gas leases existing at the time the bill was enacted.

This determination of a legislative intention of retroactive application is based on the appellants' theory of statutory construction and is advanced without benefit of judicial or statutory authority. The appellants argue that the Legislature by re-enacting Title 52, Section 87.1 in its entirety "rather than by the simpler method of referring only to the two sentences in the former statute that were altered and by adding the new subsection (b)," underscored "its intention that the amended portions of the Spacing Law [be] on an equal footing with the already existing provisions." The appellants further contend that the absence of express language in the statute that the provisions apply only prospectively negates any contrary interpretation of legislative intention.

While this Court agrees with the appellants that legislative intent is of paramount importance in the determination of a statute's retrospective or prospective application and that it is the object of this Court to ascertain the legislative intent guided by principles of statutory construction, *Lau v. Nelson*, 92 Wash.2d 823, 601 P.2d 527, 529 (1979), the Court disagrees with the appellants' interpretation of such principles and with their contention that such principles lead to the conclusion that the legislature intended Section 87.1(b) to apply to leases existing at the time the section was enacted.

The Court's decision is based on general principles of statutory construction as evidenced in the following discussion. Although the factual situations of the caselaw authority vary, the basic principles derived therefrom are nonetheless applicable in the resolution of the case at bar.

██ As a rule, "[s]tatutes are generally presumed to operate prospectively." *Scott Paper Company v. City of Anacortes*, 90 Wash.2d 19, 32, 578 P.2d 1292, 1299 (1978). However, this presumption does not defy rebuttal if the purposes and intention of the Legislature to give a statute a retrospective effect are expressly declared or are neces-

sarily implied from the language used. *State v. Ward*, 189 Okl. 532, 538, 118 P.2d 216, 223 (1941) (citing *Good v. Keel*, 29 Okl. 325, 327, 116 P. 777, 777 (1911)). An examination of the language contained in Section 87.1(b) reveals that the wording is neither so clear or so imperative that a retrospective application of the statute is mandated nor so written as to reflect any implications which deem necessary a retrospective application. Words alone, however, are not the only decisive factor in resolving the issue since "[i]t is not necessary that a statute expressly state that it is intended to operate retrospectively if such an intention can be obtained by viewing its purpose and the method of its enactment." *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wash.2d 283, 291, 494 P.2d 216, 221 (1972). The presumption against retroactive application has been subordinated "to the transcendent canon of statutory construction that the design of the Legislature be given effect." *In re Marriage of Bouquet*, 16 Cal.3d 583, 588, 128 Cal.Rptr. 427, 429, 546 P.2d 1371, 1373 (1976).

■ It has been stated that the 1977 amendments were enacted not "as a result of any general dissatisfaction with the purposes and operation of [52 O.S.1971 § 87.1] and orders issued pursuant thereto as conservation measures . . . [but] because of the effect of the regulation among owners." Kuntz, *Statutory Well Spacing and Drilling Units*, 31 Okla.U.L.Rev. 344, 344 (1978). As a result of Section 87.1(b), leased lands lying outside of the spacing unit would no longer be held by production over ninety days beyond the expiration of the primary term of the lease—a departure from the previous law that the production of oil and gas in commercial quantities from any part of the leased premises during the primary term extended the lease not only as to the acreage committed to the drilling and spacing unit but also as to the lands lying outside of the unit area. Discerning the legislative purpose, however, gives no clue as to any clear intent to apply Section 87.1(b) retrospectively to its date of enactment. The legislative intent is neither expressly declared nor necessarily ascertainable, and in the absence of a clear expression by the Legislature that the 1977 amendment was to operate retrospectively, the presumption of prospective operation weighs heavily in favor of a determination that Section 87.1(b) does not apply to pre-existing leases such as the 1967 Wickham lease. *See Wilson v. State ex rel. Okl. Tax Comm'n*, 594 P.2d 1210, 1212 (Okl.1979).

■ This conclusion is further supported by statutory construction principles which mandate "that a statute will not be applied retroactively if it alters the rights and duties under an existing contract unless expressly intended by the legislature," *Valley Inland Pacific Constructors, Inc. v. Clackamas Water District No. 2*, 43 Or.App. 527, 603 P.2d 1381, 1388 (1979), and if "the result would be to impair an obligation of a contract." *Scott Paper Co. v. City of Anacortes*, 90 Wash.2d 19, 32, 578 P.2d 1292, 1299 (1978). As stated in *Lommasson v. School District No. 1*, 201 Or. 71, 101, 267 P.2d 1105, 1110 (1954), (quoting G. Endlich, Interpretation of Statutes § 273, at 367 (1888)), " '[i]t is chiefly where the enactment would prejudicially affect vested rights, or the legal character of past transactions, that the rule in question prevails.' " Oklahoma courts have long recognized that an oil and gas lease conveys to the lessee a present, vested interest in the land. *Rich v. Doneghey*, 71 Okl. 204, 207, 177 P. 86, 89 (1918). To apply Section 87.1(b) to the appellees' oil and gas lease would indeed impair the lease contract and prejudicially affect rights vested upon execution of the contract. Since Section 87.1(b) is bereft of language or evidence which indicates an intention to affect rights which originated before its passage, again the presumption of prospective application favors a determination that the section does not apply to the 1967 Wickham lease.

The appellants' argument that the Legislature intended Section 87.1(b) to apply retroactively by its method of enactment is without merit.

Provisions of the original act or section which are repeated in the body of the

amendment, either in the same or equivalent words, are considered a continuation of the original law.... The provisions of the original act or section reenacted by the amendment are held to have been the law since they were first enacted, and the provisions introduced by the amendment are considered to have been enacted at the same time the amendment took effect.

1A J. Sutherland, *Statutes and Statutory Construction*, § 22.33, at 191. (Sands 4th ed. 1972).

Section 87.1(b) is such a provision introduced by amendment and is not a provision found in the original act. This "rule of construction allows for legislative refinement of an existing scheme of codification which the law favors, while at the same time it protects the individual against retrospective application of laws, since only pre-existing provisions in the new statute are given retrospective operation." *Herscher v. State*, 568 P.2d 996, 1002 (Alaska 1977); *accord, Wilson v. State, ex rel. Okl. Tax Comm'n*, 594 P.2d 1210, 1212 (Okl.1979).

■ The appellants' second argument on appeal is that the enactment of Senate Bill No. 7 involved an appropriate exercise of the state's police power. While this Court agrees with the proposition that "[l]aws for the conservation [and regulation] of oil and gas represent a valid exercise of the police powers of the state," *Oklahoma Natural Gas Co. v. Choctaw Gas Co.*, 205 Okl. 255, 258, 236 P.2d 970, 975 (1951), the Court expresses no opinion as to the constitutional arguments contained in the appellants' brief due to its decision that an amendatory act, such as Section 87.1(b), takes effect only from the time of its passage and has no application to prior transactions unless an intent to the contrary is expressed in the act or is clearly implied from its provisions. No such intent is found in the present case.

This opinion is not to be understood as affecting any other rights the lessor may have, including but not limited to pursual of the right embodied by the implied covenant to further develop. AFFIRMED.

IRWIN, C. J., and BARNES, V. C. J., and WILLIAMS, HODGES, LAVENDER, SIMMS and OPALA, JJ., concur.