2016 OK 96

**Pat BLAIR, an individual, Appellant,**

v.

**Gayle RICHARDSON, an individual, Troy Richardson, an individual, and Mellon Trust of New England, NA as Trustee of the UPS Qualified Stock Ownership Plan and Trust and the UPS Stock Trusts, Appellees.**

**No. 112,535**

Supreme Court of Oklahoma.

FILED SEPTEMBER 20, 2016

James W. Tilly, Tulsa, Oklahoma, for Appellant.

Sam T. Allen, IV, Sapulpa, Oklahoma, for Appellees.

KAUGER, J.:

¶ 1 The two dispositive questions presented are whether: 1) the enactment of 43A O.S. 1986 § 1–105 [1] reestablished the legal competency of an individual previously admitted to a mental health facility and presumed incompetent without a separate competency proceeding; and 2) the conveyance of her real property was void as a result of undue influence.[2] We hold that 43A O.S. 1986 § 1–105 reestablished the legal competency of the individual conveying the property, and that the deed was not executed under undue influence.

## FACTS

¶ 2 Plaintiff/Appellant Pat Blair (Blair) and Defendant/Appellee Gayle Richardson (Richardson) are sisters. They grew up in Sapulpa, Oklahoma, the location of the subject real property. After graduating from high school, Richardson married and remained in Sapulpa, while Blair attended college in Oklahoma and moved to Texas. Their mother (mother) was the only child of Mabel Grigsby, their grandmother (grandmother). The mother and grandmother initially owned the real property as joint tenants with rights of survivorship.

¶ 3 After the mother's death, Richardson helped care for the grandmother. She occasionally assisted the grandmother with errands because the grandmother could not drive. Richardson took the grandmother shopping for clothing, and would drive her around town so that she could pay her bills. One day, the grandmother told Richardson that she wanted "everything" to go to her and her children. Richardson subsequently sought advice as to the preparation of deeds at a courthouse and obtained a copy of a deed form at an office supply store. Richardson then drove the grandmother to American Abstract in Sapulpa, where the deed was filled out. The grandmother conveyed the property to herself and Richardson as joint tenants with rights of survivorship on January 23, 1987.

¶ 4 The grandmother had dealt with mental health issues in her past. In May, 1966, the District Court of Creek County ordered her admitted to Eastern State Hospital for treatment and care. She remained there until she was released as an outpatient in July, 1966. Her outpatient status lasted until 1974, and there were no further hospitalizations.

¶ 5 The relevant statute in effect at the time of the grandmother's admittance to the facility in 1966 was 43A O.S. 1961 § 64, which provided that:

No person admitted to any institution in the Department shall be considered legally mentally incompetent except those admitted in accordance with the provisions of **Sections 55** and 58 of this Title and those admitted under Section 59 of this Title who have been declared legally mentally incompetent elsewhere. (Emphasis supplied).

Because the grandmother was admitted in accordance with 43A O.S. 1961 § 55,[3] she was automatically considered legally incompetent at the time of her admittance even though there was no separate proceeding to deter-

---

1. Title 43A O.S. 1986 § 1–105 provides:

 No person admitted to any facility shall be considered or presumed to be mentally or legally incompetent except those persons who have been determined to be mentally or legally incompetent in separate and independent proceedings of an appropriate district court.

2. A third issue considered at trial was Defendant/Appellee Richardson's assertion of a statute of limitations defense. The trial court determined that Richardson was equitably estopped from asserting a statute of limitations defense because her actions may have led Plaintiff/Appellant Blair to believe that Blair owned one-third of the pro-

 ceeds of the real property sale. Because we conclude that Blair's claims fail on the merits, the statute of limitations issue will not be addressed.

3. Title 43A O.S. 1961 § 55 provides in pertinent part:

 The father, mother, husband, wife, brother, sister or child, over the age of eighteen (18) years, of a person alleged to be mentally ill, or mentally retarded, or a peace officer within the county in which the alleged mentally ill person resides or is a patient or may be, may petition the County Court, upon which is hereby conferred jurisdiction, or the judge thereof, of any

mine her competency. In 1986, § 64 was repealed and replaced by 43A O.S. 1986 § 1–105. It provided that:

No person admitted to any facility shall be considered or presumed to be mentally or legally incompetent except those persons who have been determined to be mentally or legally incompetent in separate and independent proceedings of an appropriate district court.

Therefore, the law in effect at the time of the grandmother's admittance in 1966 rendered her legally incompetent without a separate proceeding, while the law in effect at the time of the conveyance in 1987 required a separate proceeding to render her legally incompetent.

¶ 6 The grandmother died in November, 1987. At a hearing to terminate the joint tenancy, the District Court of Creek County found that Richardson owned all interest in the property. Notice of the proceeding was mailed to Blair at her home in Texas. From 1988 to 1998, Richardson rented the property and distributed a percentage of the rental proceeds to both Blair and their father. In 1988, Richardson sold the property for $85,000 and invested the funds in shares of UPS stock that were owned by her husband, Defendant/Appellee Troy Richardson. This stock is held by Defendant/Appellee Mellon Trust of New England. A disagreement arose regarding ownership of the proceeds of the real property sale and Blair filed suit on November 1, 2007, in the District Court of Creek County.

¶ 7 Blair alleged that the 1987 deed was void for two alternative reasons and requested that a constructive trust be imposed on the stock. First, she asserted that the grandmother lacked the legal capacity to convey the property. A person judicially determined to be incompetent cannot convey property.[4] Blair argued that because the grandmother's admission to the facility in 1966 had the

effect of rendering her legally incompetent, and because her legal competency was never restored, she lacked the capacity to convey property. Second, Blair asserted that the deed was tainted by undue influence.

¶ 8 At a bench trial on December 11–12, 2013, the trial court found in favor of Richardson under both theories of recovery. It concluded that the grandmother was mentally and legally competent at the time of the conveyance and that the conveyance was therefore valid. It also concluded that Blair failed to establish that the grandmother was acting under undue influence when the deed was executed.

¶ 9 Blair appealed on February 4, 2014, and the Court of Civil Appeals reversed and remanded. It reasoned that because the grandmother was considered legally incompetent at the time of her admittance to the facility and because her capacity was never judicially restored, she lacked the capacity to convey the property. It reversed based on a lack of capacity, and consequently did not address the issue of undue influence. We granted certiorari to determine whether 43A O.S. 1986 § 1–105[5] affected the grandmother's legal competency, and whether the deed was executed under undue influence. We hold that the grandmother was legally competent to convey the real property, and that the deed was not executed under undue influence.

## I.

## THE CONVEYANCE WAS NOT VOID DUE TO LACK OF CAPACITY.

### A.

### The Law in Effect at the Time of the Conveyance Governed the Conveyance.

¶ 10 Blair argues that the application of 43A O.S. 1986 § 1–105 to the grandmother

---

county for an order directing the admission of said person to a hospital or institution for the care of the mentally ill, such petition to contain a statement of the facts upon which the allegation of mental illness is based and because of which the application for the order is made.

\* \* \*

4. Title 15 O.S. 2011 24 provides:

After his incapacity has been judicially determined, a person of unsound mind can make no conveyance or other contract, nor designate any power, nor waive any right, until his restoration to capacity is judicially determined. But if actually restored to capacity, he may make a will, though his restoration is not thus determined.

5. Title 43A O.S. 1986 § 1–105, see note 1, supra.

constitutes a retroactive application of that statute in violation of Art. 5, § 54 of the Oklahoma Constitution, which provides that:

The repeal of a statute shall not revive a statute previously repealed by such statute, nor shall such repeal affect any accrued right, or penalty incurred, or **proceedings begun by virtue of such repealed statute.** (Emphasis supplied).

According to Blair, the grandmother's admission hearing constitutes "proceedings" begun by virtue of 43A O.S. 1961 § 64, and therefore the repeal of 43A O.S. 1961 § 64 cannot change the legal effect of any order made pursuant to the admission hearing.

¶ 11 Richardson, however, maintains that the admission proceedings were not begun by virtue of 43A O.S. 1961 § 64. Instead, she claims, the proceedings were begun by virtue of 43A O.S. 1961 § 55.[6] Section 55 provided the means through which the court could be petitioned and the means through which the court could grant the admission order, while § 64 had the effect of rendering the grandmother legally incompetent after the proceedings had concluded.

 ¶ 12 Title 43A O.S. 1986 § 1–105 was the law at the time of the conveyance. To determine whether a statute should be applied retroactively or prospectively, the statute should be interpreted to give effect to the intent of the Legislature.[7] While a statute is generally presumed to apply prospectively,[8] it may be applied retroactively if the statute's language implies that the Legislature intended to extend the benefits of the statute to situations already in existence at the time of the statute's passage.[9] The text of the statute

is not the only decisive factor.[10] Even in the absence of language specifying that the statute is intended to remedy existing conditions, such an intention may be inferred by probing the purpose of the statute.[11] A statute is interpreted to further that purpose, and to champion the broad public policy goals that underlie it.[12]

¶ 13 We have previously recognized legislative intent to apply a statute retroactively although the statute was devoid of any express retroactive language. In re Bomgardner, 1985 OK 59, ¶ 10, 711 P.2d 92 involved the interpretation of a statute specifying the rights of grandparents to visit their grandchildren.[13] The grandparents' daughter had died, and the daughter's husband refused to allow the grandparents access to their grandchild. The grandparents brought suit under the statute in effect at the time of that suit, which would have allowed them access to the child. The child's father successfully argued in the district court that the grandparent's claim was governed by the statute in effect at the time of the mother's death, which would not have allowed them access to the child.[14] We held that the father could not "simply rely on the presumption against retroactive application."[15] After considering the legislative policy goal of promoting the best interests of the child, we reversed the district court and held that the grandparents had standing to bring their claim under the statute even though it had not been enacted when their claim arose.

 ¶ 14 Similarly, the policy goals underlying the enactment of 43A O.S. 1986 § 1–105 demonstrate legislative intent to extend the

---

6. Title 43A O.S. 1961 § 55, see note 3, supra.

7. Starkey v. Oklahoma Dep't of Corr., 2013 OK 43, ¶ 21, 305 P.3d 1004; Houck v. Hold Oil Corp., 1993 OK 166, ¶ 16, 867 P.2d 451; In re Bomgardner, 1985 OK 59, ¶ 10, 711 P.2d 92.

8. In re Bomgardner, 1985 OK 59, ¶ 10, 711 P.2d 92; Wickham v. Gulf Oil Corp., 1981 OK 8, ¶ 13, 623 P.2d 613; Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶ 7, 859 P.2d 1081.

9. In re Bomgardner, 1985 OK 59, ¶ 10, 711 P.2d 92; Wickham, 1981 OK 8, ¶ 13, 623 P.2d 613.

10. In re Bomgardner, 1985 OK 59, ¶ 10, 711 P.2d 92; Wickham, 1981 OK 8, ¶ 13, 623 P.2d 613.

11. In re Bomgardner, 1985 OK 59, ¶ 10, 711 P.2d 92; Wickham, 1981 OK 8, ¶ 13, 623 P.2d 613.

12. World Pub. Co. v. White, 2001 OK 48, ¶ 10, 32 P.3d 835; Haggard v. Haggard, 1998 OK 124, ¶ 1, 975 P.2d 439; Price v. Southwestern Bell Tel. Co., 1991 OK 50, ¶ 7, 812 P.2d 1355.

13. Title 10 O.S. 1981 § 5.

14. Title 10 O.S.Supp. 1978 § 5.

15. In re Bomgardner, 1985 OK 59, ¶ 10, 711 P.2d 92.

benefits of the statute to those previously presumed incompetent without a separate competency proceeding. Two of these goals are "to provide orderly and reliable procedures for commitment of persons alleged to be in need of treatment consistent with due process of law" and "to protect the rights of consumers hospitalized pursuant to law."[16]

¶ 15 The application of 43A O.S. 1961 § 64, which automatically declared the grandmother legally incompetent without a separate proceeding, disregards the Legislature's goal of according due process to persons allegedly in need of treatment. Due process [17] is an orderly proceeding in which "the citizen has an opportunity to be heard, and to defend, enforce and protect his rights."[18] There was no separate proceeding in which the grandmother had an opportunity to be heard and safeguard her rights. The grandmother had a single hearing to determine whether admission to a care facility was appropriate. She was later formally discharged after medical professionals determined that care was no longer required, and then lived the remainder of her life without any further hospitalization. Rendering her legally incompetent for an indefinite period based on this single hearing contravenes the Legislature's goal of providing due process to those in need of treatment.

· ¶ 16 The application of 43A O.S. 1961 § 64 also disregards the Legislature's goal of protecting the rights of consumers hospitalized pursuant to law. Along with losing the right to contract and convey property,[19] those de-clared incompetent can lose corporate membership interests and rights,[20] professional licensing rights,[21] and the ability to purchase firearms.[22] If the repealed 43A O.S. 1961 § 64 remained operative on the grandmother, then she automatically lost a number of important rights based on a brief period of mental health treatment that occurred in 1966. Denying the grandmother's right to convey property over twenty years after her hospitalization ended contravenes the Legislature's goal of protecting the rights of those hospitalized.

¶ 17 The law in effect in 1966, which had been repealed in 1977,[23] had no bearing on the grandmother's legal competency when the deed was executed in 1987. Pursuant to 43A O.S. 1986 § 1–105, the grandmother was legally competent at the time of the convey-ance.

## B.

### Lack of Capacity Cannot be Established by Operation of Statutory Law.

■ ¶ 18 Blair does not argue that the grandmother actually lacked the mental capacity required to convey property, but instead argues that the grandmother should be considered legally incompetent by operation of statutory law. Blair contends that because the grandmother's admission to the facility in 1966 had the effect of rendering her legally incompetent, and because her legal competency was never restored, she lacked the capacity to convey property.

---

16. Title 43A O.S. 1986 § 1–104 provides that:

The Oklahoma Legislature hereby declares that the public policy of this state is to assure adequate treatment of persons alleged to be in need of mental health treatment or treatment for drug or alcohol abuse, to establish behavioral standards for determination of dangerousness of persons in need of such treatment, to allow for the use of the least restrictive alternative in the determination of the method of treatment, to provide orderly and reliable procedures for commitment of persons alleged to be in need of treatment consistent with due process of law, and to protect the rights of consumers hospitalized pursuant to law.

17. Due process of law is guaranteed by the United States Constitution, U.S. Const. Amend. XIV, and the Oklahoma Constitution. Okla. Const. Art. II, § 7.

18. Derr v. Weaver, 1935 OK 1223, ¶ 12, 173 Okla. 140, 47 P.2d 573; Pryor v. W. Paving Co., 1919 OK 222, ¶ 12, 74 Okla. 308, 184 P. 88.

19. Title 15 O.S. 2011 § 24, see note 4, supra.

20. Title 18 O.S. 2011 § 2036.

21. Title 59 O.S. 2011 § 637(A)(14).

22. Title 21 O.S. 2012 § 1289.10.

23. Title 43A O.S. 1961 § 64 was first amended in 1977. 43A O.S.Supp. 1977 § 64 provided:

No person admitted to any medical facility shall be considered or presumed to be mentally or legally incompetent except those persons who have been determined to be mentally or legally incompetent in separate and independent proceedings of an appropriate district court.

¶ 19 It is Richardson's position that, irrespective of Blair's statutory operation argument, 43A O.S. 1961 § 64 cannot be applied to the grandmother after her discharge from the hospital because doing so would be an unconstitutional denial of procedural due process. Richardson cites Tot v. United States, 319 U.S. 463, 467, 63 S.Ct. 1241, 1245, 87 L.Ed. 1519 (1943), in which the United States Supreme Court held that "a statutory presumption cannot be sustained if there be no rational connection between the fact proved and the ultimate fact presumed." According to Blair, there is no rational connection between the fact proved—that the grandmother required hospitalization for mental health care—and the fact presumed—that the grandmother was incompetent.

¶ 20 The lack of capacity can be established in three ways. The Title Examination Standards [24] provide in part that:

> On or after June 3, 1977 [25], lack of capacity must be established (I) in a mental health case filed prior to that date, (ii) in a civil action or (iii) in a guardianship proceeding. [26]

The specification of items in a list implies the exclusion of all others. [27] The word "must" is an affirmative command. [28] So, lack of capacity to convey property can only be established by a mental health case filed before 1977, a civil action, or a guardianship proceeding. Therefore, lack of capacity cannot be established by operation of statutory law, and consequently the operation of 43A O.S. 1961 § 64 cannot establish the grandmother's lack of capacity.

¶ 21 In addition, the grandmother's incapacity was not established by a mental health case filed before 1977, a civil action, or a guardianship proceeding. While the hearing in 1966 was a mental health case, it did not establish the grandmother's lack of capacity. The hearing determined that admission to the facility was appropriate, and the operation of 43A O.S. 1961 § 64 established her lack of capacity. For similar reasons, her incapacity was not established in a civil action. Even assuming that the admission hearing was a "civil action," it determined only that admission to the facility was appropriate. Furthermore, this hearing was not a guardianship proceeding. Guardianship proceedings arise under Title 30, The Oklahoma Guardianship and Conservatorship Act. [29] Be-

**24.** In Knowles v. Freeman, 1982 OK 89, ¶ 16, 649 P.2d 532, this Court unanimously held that because the Title Examination Standards were adopted by the Oklahoma Bar Association and accepted by practitioners in the State, they are a persuasive authority.

**25.** See note 23, supra.

**26.** Title 16 O.S. 2011 Ch. 1, App., 4.2 provides: In the absence of actual or constructive notice to the contrary, it is presumed that a grantor has mental capacity to convey. An adjudication of incompetency in a sanity or mental health case filed prior to June 3, 1977, pertaining to a grantor constitutes constructive notice of lack of capacity. Mental health cases filed on or after June 3, 1977, pursuant to 43A O.S.A. § 54.4 (now § 5–401) do not result in adjudications of incompetency. On or after June 3, 1977, lack of capacity must be established (I) in a mental health case filed prior to that date, (ii) in a civil action or (iii) in a guardianship proceeding.
If lack of capacity has been established, restoration may be accomplished by:
A. MENTAL HEALTH CASES.
1. Final order of the court having jurisdiction of a proceeding pursuant to 43A O.S.A. § 7–112.
2. Final order of the court having jurisdiction pursuant to 43A O.S.A. § 111.

3. Filing with the district court clerk in the original proceedings a certificate of restoration to competency pursuant to 43A O.S.A. §§ 7–110 & 7–111.
B. GUARDIANSHIP PROCEEDINGS.
1. Final order of the court of the county in which the person was adjudged insane or mentally incompetent pursuant to 30 O.S.A. §§ 3–116 (formerly 58 O.S.A. § 854).
2. Final order of the court having jurisdiction discharging the guardian without appointing another guardian, 30 O.S.A. §§ 3–117 (formerly 58 O.S.A. § 855).

**27.** Atkinson v. Halliburton Co., 1995 OK 104, ¶ 24, 905 P.2d 772; Newblock v. Bowles, 1935 OK 120, ¶ 14, 170 Okla. 487, 40 P.2d 1097; Cornell v. McAllister, 1926 OK 814, ¶ 17, 121 Okla. 285, 249 P. 959.

**28.** Fuller v. Odom, 1987 OK 64, ¶ 7, 741 P.2d 449; Sneed v. Sneed, 1978 OK 138, ¶ 3, 585 P.2d 1363; Oklahoma Alcoholic Beverage Control Bd. v. Moss, 1973 OK 45, ¶ 11, 509 P.2d 666.

**29.** Title 30 O.S. 2011 § 3–111 provides in part that:

> A. At the hearing on the petition the court shall determine whether or not it is necessary to appoint a guardian of the person, property

cause the grandmother was admitted under 43A O.S. 1961 § 55, which did not appoint her a guardian, her incapacity was not established by a guardianship proceeding.

¶ 22 Accordingly, the grandmother was legally competent at the time of the conveyance because of the enactment of 43A O.S. 1986 § 1–105, and because lack of capacity to convey property cannot be established by operation of statutory law.

## II.

### THE DEED WAS NOT EXECUTED UNDER UNDUE INFLUENCE.

¶ 23 Blair argues that because Richardson and the grandmother were in a confidential relationship, and because Richardson assisted in the preparation of the deed, a presumption arose that the deed was tainted by undue influence. Blair further argues that because Richardson failed to offer evidence sufficient to overcome this presumption of undue influence, the conveyance of the property was void.

¶ 24 Richardson maintains that the burden of demonstrating undue influence remains with Blair because Richardson and the grandmother were not in a confidential relationship and because Richardson did not actively participate in preparation of the deed.

Blair further argues that Richardson did not carry this burden.

¶ 25 Undue influence occurs when a person in a position of confidence or authority uses that confidence or authority to obtain an unfair advantage over another.[30] To void a conveyance, the influence must "destroy the grantor's free agency" and "substitute the will of another for that of the grantor."[31] Mere suspicion or the possibility of undue influence cannot defeat an otherwise valid conveyance,[32] and the burden of demonstrating undue influence rests with the party alleging it.[33] However, that burden can be shifted, and a rebuttable presumption of undue influence arises if the contesting party can establish that (a) a confidential relationship existed between the grantor and another, stronger party; and (b) the stronger party actively assisted in the preparation of the deed.[34]

¶ 26 Richardson and the grandmother were not in a confidential relationship. A confidential relationship is "a fiduciary relationship and exists whenever trust and confidence are placed by one person in the integrity and fidelity of another."[35] We found a confidential relationship between a testator and her daughter/beneficiary in In re Estate

or both. If a guardian is needed, the court shall determine:
1. when a general or limited guardian of the person of the subject of the proceeding is requested, the essential requirements for the health and safety of the subject of the proceeding and the skills and knowledge necessary to meet those requirements;
2. when a general or limited guardian of the property of the subject of the proceeding is requested, the type and amount of the financial resources of the subject of the proceeding, the essential requirements for managing the financial resources, and the skills and knowledge necessary to manage the financial resources;
3. the nature and extent of the incapacity of the subject of the proceeding, if any; and
4. whether by clear and convincing evidence the subject of the proceeding is an incapacitated or partially incapacitated person.
\* \* \*

30. Title 15 O.S. 2011 § 61 provides:

Undue influence consists:
1. In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him.
2. In taking an unfair advantage of another's weakness of mind; or,
3. In taking a grossly oppressive and unfair advantage of another's necessities or distress.

31. Tate v. Murphy, 1949 OK 228, ¶ 42, 202 Okla. 671, 217 P.2d 177; Montgomery v. Willbanks, 1947 OK 50, ¶ 10, 198 Okla. 684, 181 P.2d 240.

32. Tate v. Murphy, 1949 OK 228, ¶ 42, 202 Okla. 671, 217 P.2d 177; Myers v. Myers, 1927 OK 394, ¶ 33, 130 Okla. 184, 266 P. 452; Kindt v. Parmenter, 1921 OK 330, ¶ 7, 83 Okla. 116, 200 P. 706.

33. In re Estate of Holcomb, 2002 OK 90, ¶ 18, 63 P.3d 9; Matter of Estate of Maheras, 1995 OK 40, ¶ 8, 897 P.2d 268; Matter of Estate of Beal, 1989 OK 23, ¶ 14, 769 P.2d 150.

34. In re Estate of Holcomb, 2002 OK 90, ¶ 18, 63 P.3d 9; Matter of Estate of Maheras, 1995 OK 40, ¶ 8, 897 P.2d 268.

35. In re Estate of Holcomb, 2002 OK 90, ¶ 22, 63 P.3d 9; Fipps v. Stidham, 1935 OK 855, ¶ 18, 174 Okla. 473, 50 P.2d 680.

of Holcomb, 2002 OK 90, ¶ 18, 63 P.3d 9. There, the daughter was the attorney in fact of the testator, and had check-writing privileges on her bank account. The testator had a stroke, which left her bedridden and paralyzed, and she permanently lived in the daughter's home. On the other hand, we failed to find a confidential relationship between a grantor and his nephew in Phillips v. Phillips, 1964 OK 214, ¶ 18, 395 P.2d 803. There, the nephew frequently visited his uncle and helped him after he fell ill. Rather than a confidential relationship, we determined that there was merely fondness between family members.

¶ 27 None of the facts that created a confidential relationship in Holcomb, supra, exist in the present case. Richardson had no control over the grandmother's financial or legal affairs, and the grandmother never lived with Richardson. Their relationship was similar to that of the uncle and nephew in Phillips, supra. Richardson and the grandmother spent time together, and Richardson occasionally helped the grandmother with errands. Indeed, the extent of the uncle's dependency on the nephew in Phillips was greater than was the grandmother's dependence on Richardson. The nephew in Phillips took his uncle to Michigan, Texas, and Louisiana for medical treatment, while Richardson merely took the grandmother shopping in Sapulpa. No confidential relationship existed between Richardson and the grandmother.

¶ 28 Nor did Richardson actively assist in the preparation of the deed. To give rise to a presumption of undue influence, the active participation must go to the substance of the act,[36] and the presence of the grantee in the room at the time of the conveyance does not constitute active participation.[37] We found active participation in the preparation of a trust by a trustee in Estate of Gerard v. Gerard, 1995 OK 144, ¶ 25, 911 P.2d 266. There, the trustee personally contacted the attorney by telephone and instructed him to make changes to the trust while the grantor lay on his deathbed. In White v. Palmer, 1971 OK 149, ¶ 30, 498 P.2d 1401, we found active participation in the preparation of a will by a beneficiary when the beneficiary added handwritten amendments to the rough draft of the will.

¶ 29 In the present case, Richardson's involvement in the preparation of the deed included asking about deeds at a courthouse, obtaining a copy of a deed at an office supply store, and driving the grandmother to the abstract company where the deed was filled out. While Richardson may have participated in the preparation of the deed, she did not **actively** participate in the preparation. Unlike in Gerard and White, she did not propose any changes or amendments to the deed. The deed was merely a standard form that was filled out at the grandmother's direction.

¶ 30 Because Richardson and the grandmother were not in a confidential relationship, and because Richardson did not actively assist in the preparation of the deed, the trial court correctly refused to presume that undue influence was exerted by Richardson. The burden of demonstrating that undue influence was exerted remained with Blair, and she failed to carry it.

¶ 31 Antle v. Hartman, 1944 OK 43, ¶ 1, 193 Okla. 524, 145 P.2d 756 included a fact pattern similar to the present case. There, the plaintiff and defendant were sisters. After their mother had conveyed all of her real property to the defendant, the plaintiff brought suit, alleging that the conveyance was void because the mother was mentally incompetent and the deed was executed under undue influence. We concluded that the grantor was competent and that no undue influence occurred. The defendant had provided care for her mother for a number of years, while the plaintiff did not live nearby. We found that the conveyance was an appropriate and appreciative act given the circumstances, and that "influences which arise out of the affection, confidence and gratitude of a parent to a child and inspire a gift are natural and lawful."

**36.** In re Estate of Holcomb, 2002 OK 90, ¶ 23, 63 P.3d 9; White v. Palmer, 1971 OK 149, ¶ 27, 498 P.2d 1401.

**37.** Matter of Estate of Beal, 1989 OK 23, ¶ 17, 769 P.2d 150; White v. Palmer, 1971 OK 149, ¶ 27, 498 P.2d 1401; Hubbell v. Houston, 1967 OK 138, ¶ 32, 441 P.2d 1010.

¶ 32 While not the grandmother's child, Richardson helped the grandmother after the grandmother's only child had passed away. In <u>Antle</u>, the defendant spent significant time with her mother and the plaintiff did not live nearby. Similarly here, Richardson and the grandmother lived in Sapulpa and spent time together, while Blair lived in Texas. The gift given by the grandmother could have naturally arisen out of the resulting affection and gratitude.

¶ 33 Richardson was neither in a confidential relationship with the grandmother, nor did she actively assist in the preparation of the deed. Therefore, no presumption of undue influence arose, and Blair failed to carry her burden of demonstrating that any undue influence was exerted. Accordingly, the deed was not executed under undue influence.

### CONCLUSION

¶ 34 The Legislature intended for the enactment of 43A O.S. 1986 § 1–105 to ensure that commitment procedures were consistent with due process, and to protect the rights of those hospitalized. Continuing to apply 43A O.S. 1961 § 64, which automatically considers individuals legally incompetent without a separate competency proceeding thwarts, rather than furthers, these legislative policy goals. Title 43A O.S. 1961 § 64, which had been repealed, had no bearing on the grandmother's legal competency when the deed was executed. In addition, the means by which the lack of capacity can be established has been expressly specified. The operation of statutory law was not included, and therefore lack of capacity cannot be established by the operation of 43A O.S. 1961 § 64. Consequently, the conveyance was not void due to lack of capacity.

¶ 35 Nor was the conveyance void due to undue influence. Richardson and her grandmother were not in a confidential relationship, and Richardson's involvement in the procurement of the deed did not rise to the level of active participation. No presumption of undue influence arose and Blair failed to demonstrate that it occurred. Accordingly, the conveyance of the subject real property was valid.

**COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT AFFIRMED.**

REIF, C.J., KAUGER, WATT, EDMONDSON, COLBERT, GURICH, JJ., concur.

COMBS, V.C.J., WINCHESTER, TAYLOR, JJ., dissent.