ACCIDENT CARE AND TREATMENT CENTER v. CSAA GENERAL INSURANCE CO.



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ACCIDENT CARE AND TREATMENT CENTER v. CSAA GENERAL INSURANCE CO.

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ACCIDENT CARE AND TREATMENT CENTER v. CSAA GENERAL INSURANCE CO.
2021 OK CIV APP 3
Case Number: 118932
Decided: 12/30/2020
Mandate Issued: 01/27/2021
Companion w/ 118933; 118934; 118935
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II
Cite as: 2021 OK CIV APP 3, __ P.3d __

 

ACCIDENT CARE AND TREATMENT CENTER, INC., Plaintiff/Appellee,
v.
CSAA GENERAL INSURANCE COMPANY d/b/a AAA INSURANCE COMPANY, Defendant/Appellant.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE CINDY H. TRUONG, TRIAL JUDGE

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS

Collin R. Walke, SELECT LEGAL SERVICES, L.L.C., Oklahoma City, Oklahoma, for Plaintiff/Appellee

Maurice G. Woods, II, Kelsey A. Chilcoat, MCATEE & WOODS, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 This appeal concerns an action to enforce and foreclose a medical service lien. The trial court granted partial summary judgment to Appellee Accident Care and Treatment Center, Inc. (Accident Care) against Appellant CSAA General Insurance Company d/b/a AAA Insurance Company (CSAA) and denied CSAA's motion for rehearing.[1] We reverse and remand for further proceedings.

BACKGROUND

¶2 The parties agree about many of the facts pertinent to this appeal. Robert Hudson was injured in an automobile accident on December 1, 2017, allegedly caused by the negligence of CSAA's insured. Mr. Hudson submitted a third-party claim to CSAA. On January 8, 2018, Accident Care filed its lien for medical services provided to Mr. Hudson. The Notice of Medical Service Lien stated Accident Care claimed "a lien in the amount of $2,469.47 for medical services [provided to Mr. Hudson], as more particularly shown by the itemized statement hereto as Exhibit A (not attached)[.]"

¶3 On February 13, 2018, CSAA sent a letter to Accident Care asking that the letter "serve as a request for the reduction of the lien amount of $2,469.47 for medical services provided to [Mr. Hudson] [to] $1,275.16." CSAA stated it requested that reduction because it "believe[s] that the usual and customary charge for services listed on Mr. Hudson's medical bills is $1,275.16." Prior to sending this letter, on February 6, 2018, CSAA and Mr. Hudson executed a Release of All Claims for Bodily Injury Only in which Mr. Hudson acknowledged receipt of payment from CSAA in the amount of $950 "and an undetermined amount" for medical services provided by Accident Care. Among the various waivers and acknowledgements to which Mr. Hudson agreed, he agreed

to defend, indemnify and hold harmless [CSAA] against any claims, liens, demands, actions and causes of action asserted by any person, corporation . . . or other entity seeking reimbursement of funds incurred or paid to or on behalf of [Mr. Hudson] for any purpose, which payments (including medical services) were necessitated or allegedly caused as a result of the accident . . . that now exist, or may hereafter accrue against [CSAA].

In a letter to Mr. Hudson also dated February 6, 2018, CSAA stated it enclosed the "Release for your bodily injury claim prepared in the amount of $950.00 exclusive of [Accident Care's] lien as we discussed in our recent conversation." It also informed him that he had two years from the date of the accident to file a lawsuit or settle the claim and if he failed to do so, CSAA "will be entitled to deny your personal injury claim on that basis."

¶4 Mr. Hudson received a check from CSAA for $950 dated February 23, 2018; the check did not also name Accident Care as payee. As of November 18, 2019, Accident Care received no payments from CSAA, and Accident Care maintained, "[t]he total amount still owed and outstanding under the lien is $2,496.47."

¶5 Accident Care filed its amended petition seeking to foreclose its lien on June 7, 2019. CSAA answered, denying, among other things, the amount of Accident Care's lien and alleging various affirmative defenses including allegations that the amount of Accident Care's charges are unreasonable within the medical community and are unreasonable under the circumstances, and that Accident Care overcharged Mr. Hudson and "may have charged" Mr. Hudson for services it did not render to him.

¶6 Accident Care filed its motion for partial summary judgment to which it attached CSAA's responses to its Request for Admissions. CSAA denied Accident Care's request for Admission No. 1 that "each and every medical billing charge made by [Accident Care] was usual and customary and necessary." Request for Admission No. 2 stated: "Admit [Accident Care's] medical lien is a valid lien." CSAA responded: "[CSAA] does not dispute [Accident Care] completed the statutory steps to file a medical lien. Thus, in that sense, [CSAA] does not dispute that [Accident Care's] lien is 'valid.'"

¶7 In its motion, Accident Care requested the court "enter partial summary judgment on the issue of liability for [CSAA's] failure to include [it] on the settlement check," relying on Broadway Clinic v. Liberty Mutual Insurance Co., 2006 OK 29, 139 P.3d 873. In its prayer for relief, Accident Care requested judgment on the issue of liability and damages of $2,225.16 "(the amount admitted to be owed by [CSAA] plus the amount wrongfully paid outside of [Accident Care's] lien), plus pre and post-judgment interest."

¶8 Accident Care argues that under Oklahoma decisional law interpreting 42 O.S. 2011 § 46(B), CSAA was required to include it as payee on the $950 check made payable solely to its patient. Accident Care further argues, among other things, that what charges are "usual and customary" is irrelevant because CSAA has already determined that the usual and customary charge for the services Mr. Hudson received is $1,275.16. Accident Care further argues that because the medical service lien statute does not contain any language about whether a charge is usual and customary, CSAA has no independent authority to determine the reasonableness of the medical services it provided, or the amount charged for those services. It argues, among other things, that the proper course for CSAA was to file an interpleader action, 12 O.S. 2011 § 2022, to deposit with the court the funds CSAA determined were payable on Mr. Hudson's claim, and to allow the court to resolve how much was owed to Accident Care and to Mr. Hudson.

¶9 CSAA filed a response in objection to Accident Care's motion and a request pursuant to Rule 13(d), Oklahoma Rules for the District Courts, 12 O.S. 2011 & Supp. 2013, ch. 2, app. 1, for more time to conduct discovery.[2] CSAA admits it issued a check to Mr. Hudson for "bodily injury" and that it was a settlement of Mr. Hudson's general damages claim. It does not dispute that it determined Accident Care is entitled to $1,275.16 for the medical services it provided to Mr. Hudson but asserts that fact "evidences the dispute between the parties as to the amount owed under the lien." It disputes the amount owed to Accident Care the amount claimed by Accident Care in its lien notice.

¶10 Among its arguments, CSAA asserts Accident Care has failed to meet its burden of proof in establishing each element of a lien foreclosure. It argues Accident Care has not proved that the amount "claimed" by the lien is the "amount due," pursuant to 42 O.S. § 46(B), and that Accident Care's "lien against the bodily injury claim held by its patient ([Mr.] Hudson) is 'for the amount due' not for the amount claimed by the lien." In other words, CSAA argues the amount due is a question of fact because the amount is disputed, and it is only obligated to pay the reasonable and necessary medical expenses Mr. Hudson incurred. It maintains a jury must decide both these questions of fact.

¶11 CSAA further argues that a lien does not imply an obligation. It relies on Oklahoma decisional law in non-medical lien cases in which the appellate courts have explained that "[t]he purpose of the lien statutes is 'to give notice to the owners and to third parties of the intent to claim a lien for a definite amount,'" and that "[t]he effect of filing a lien is the security of a claim for a definite amount, not the security of payment for a definite amount. It also argues neither Oklahoma decisional law nor statutory law mandates the issuance of joint checks to all known lienholders on settlement checks to third parties.

¶12 The hearing on Accident Care's motion included the motions it filed in three other cases.[3] In addition to the parties' written arguments, CSAA also argued that Accident Care had not complied with the requirements of § 46(C) because absent from "each of [Accident Care's] motions for summary judgment, is any statement as to the amount allegedly due for the medical services rendered." It argued, "no statement of account or statement of the actual services rendered [is] attached to any of [the lien statements]. In the body of [Accident Care's] paragraph making [its] lien claim, [Accident Care] say[s] that the itemized statement of account is attached to Exhibit A, but in parenthesis, [it] say[s] 'not attached.'" Further, CSAA argued, Accident Care has "not presented the amount of the debt," "not in the filing of the liens, the presentation of [them], and especially not in the motions" Accident Care filed. CSAA argued that Broadway and other cases upon which Accident Care relies concern the monies to which a medical service lien can attach, not the issue of the correctness of the debt, the matter at issue here. The following exchange occurred at the hearing:

THE COURT: . . . But if you challenge the amount, the proper procedure would be you challenge the lien and not go and pay everyone else and not honor the lien, what the statute is there for, correct?

[CSAA's Counsel]: We are challenging the lien here, Judge. Absolutely we are, yes.

CSAA argued it is holding the money for payment of Accident Care's lien but again asserted the amount of the charge is a triable issue of fact for the jury.

¶13 Accident Care argued the question of the lien's validity is moot because, it argued, CSAA "admits that [the] lien is valid." Further, Accident Care argued the medical service lien statute was amended "a year or two ago" because of concerns over whether HIPAA violations were occurring because of the public filing of medical records in attachments to the medical service liens. Accident Care also challenged CSAA's arguments as to who is entitled to challenge the lien and argued that § 46 does not entitle the insurer to go around the medical service lienholder and pay the "patient something else that [it] think[s] [the patient is] entitled to because the . . . lien law . . . says, 'All moneys payable.' All moneys payable."

¶14 Agreeing Accident Care has "a claim on all moneys payable," CSAA argued that claim, however, "is not liquidated. That claim has to be turned into proof, and that proof has to be how much was actually due on those charges." As in other lien actions, it argued, the medical service lienholder must prove the correctness of the amount due and CSAA "can challenge . . . whether the medical services were rendered or not." And, in apparent answer to the statement of counsel for Accident Care, "But not on behalf of the patient," CSAA argued it can challenge the correctness of the debt because it is required to pay the debt. The trial court responded: "Well, I disagree with [CSAA]. I'm going to grant [Accident Care's] partial summary judgment and also attorney fees and costs[.]"

¶15 After the court's announcement at the conclusion of the hearing, but prior to the issuance of its "Journal Entry" (Judgment), CSAA filed a motion for rehearing asserting the trial court appeared to have "rested its ruling on the conclusion that only the patient, and not [CSAA], could challenge the correct amount due under the lien." Because Accident Care did not address that issue in its motion, CSAA argues, it had not addressed "CSAA's implied authority to challenge the correctness of the lien on behalf of [Accident Care's] patient." CSAA argues Mr. Hudson had the right to challenge the correctness of Accident Care's claim and that he had "expressed a clear intention to assign" his right to CSAA to contest the Accident Care lien and to challenge the amount due for the services Accident Care rendered. CSAA points to the release Mr. Hudson signed, "which carved out an 'undetermined amount' owed to [Accident Care]," and to communications between CSAA and Mr. Hudson related to the Accident Care lien. CSAA also argues the lien was procedurally deficient because while it contained a dollar amount, it did not contain "a statement of the amount claimed." It argues the motion for partial summary should be denied because Accident Care's "lien does not conform to the statutory requirements for filing a valid lien, [Accident Care's] lien did not establish a security against the settlement between CSAA and [Mr. Hudson]."

¶16 In its response to the motion for rehearing, Accident Care argues the requirements of § 46(C) were met and that CSAA owes it the amount paid to Mr. Hudson; that is, CSAA owes the $950 and the "undetermined amount" owed to Accident Care. Accident Care also disputes there is any evidence of an assignment by Mr. Hudson to CSAA of his right to dispute the amount owed to Accident Care.

¶17 In its Judgment, the trial court granted Accident Care's motion for partial summary judgment in the amount of $2,225.16, and prejudgment and post-judgment interest, and denied CSAA's motion for rehearing pursuant to Rule 4(h), Rules for the District Courts of Oklahoma, 12 O.S. 2011 & Supp. 2013, ch. 2, app.

¶18 CSAA appeals.

STANDARD OF REVIEW

¶19 An appeal from an order granting summary judgment is subject to de novo review.[4] Shull v. Reid, 2011 OK 72, ¶ 3, 258 P.3d 521. "In its re-examination of the trial tribunal's legal rulings an appellate court exercises plenary, independent and nondeferential authority." Bronson Trailers & Trucks v. Newman, 2006 OK 46, ¶ 5, 139 P.3d 885 (footnote omitted). Further,

all facts and inferences presented in the summary judgment record must be viewed in a light most favorable to the non-movant. Also, appellate courts must bear equally an affirmative duty to test all evidentiary material tendered in the summary process for its legal sufficiency to support the relief sought by the movant.

Parris v. Limes, 2012 OK 18, ¶ 12, 277 P.3d 1259 (citations omitted).

¶20 This appeal also raises issues of statutory construction that similarly present a question of law, State v. Tate, 2012 OK 31, ¶ 7, 276 P.3d 1017, and, consequently, require a de novo review standard, Kluver v. Weatherford Hosp. Auth., 1993 OK 85, ¶ 14, 859 P.2d 1081.

ANALYSIS

¶21 CSAA argues the trial court erred in granting partial summary judgment to Accident Care because, while the lien "includes the total dollar amount of the account, [it] does not include a 'statement of the amount claimed.'" CSAA claims the lien did not conform to the statutory requirements for the filing of a valid lien and does "not establish a security against the settlement between CSAA and [Mr.] Hudson." It further argues the trial court erred in granting summary judgment to Accident Care because CSAA, on behalf of Mr. Hudson, challenges the amount due on Accident Care's lien, Accident Care must prove the amount due and CSAA has a right to a jury trial on that issue. Additionally, CSAA maintains it is not required to issue a check to both the person with whom it is settling a claim and any lienholder who may have a lien on those funds.

I. Effectiveness of Lien

A. Retrospective Application of 2018 Amendment to § 46(C)

¶22 It is undisputed that Accident Care filed its lien statement on January 5, 2018, and it did not contain an itemized statement of the amount claimed. The statute in effect at that time provided:

No lien which is provided for in this section shall be effective unless, before the payment of any monies to the injured person . . . for such injuries . . . :
1. A written notice is sent setting forth an itemized statement of the amount claimed . . . .

42 O.S. 2011 § 46(C) (emphasis added). The statute was amended, effective May 3, 2018, omitting from § 46(C)(1) the word "itemized." While Accident Care's counsel correctly argued to the trial court that the medical service lien statute was amended, none of the parties nor the trial court addressed the effective date of the amendment during the hearing. We conclude the statute has retrospective application; therefore, an "itemized" statement was not required to give effect to Accident Care's lien.

¶23 The Oklahoma Supreme Court recently reiterated long-standing Oklahoma jurisprudence stating that in determining

whether a statute should be applied retroactively or prospectively, the statute should be interpreted to give effect to the intent of the Legislature. While a statute is generally presumed to apply prospectively, it may be applied retroactively if the statute's language implies that the Legislature intended to extend the benefits of the statute to situations already in existence at the time of the statute's passage. The text of the statute is not the only decisive factor. Even in the absence of language specifying that the statute is intended to remedy existing conditions, such an intention may be inferred by probing the purpose of the statute. A statute is interpreted to further that purpose, and to champion the broad public policy goals that underlie it.

Blair v. Richardson, 2016 OK 96, ¶ 12, 381 P.3d 717 (footnotes omitted). The language of the 2018 amendment does not expressly state a legislative intent to extend the benefits of the amendatory language to situations already in existence; that is, to remedy existing conditions. However, the question remains whether a legislative intent to extend those benefits retrospectively (e.g., allowing a medical service lienholder to publicly file its lien as required, but keeping confidential protected health information) is implied by the amendment; that is, whether the change furthers the purpose of the medical service lien statute and the broad public policy goals that underlie it.

¶24 In Broadway Clinic v. Liberty Mutual Insurance Co., 2006 OK 29, 139 P.3d 873, the Oklahoma Supreme Court reiterated:

A statutory lien such as that accorded by § 46 to a physician stands in derogation of the common law. As a remedial device that owes its existence to a legislative enactment, the text of the physician's lien statute is the measure of both the right and the remedy it creates. A statutory lien must be strictly confined within the ambit of legislation giving it birth. Hence, the funds upon which a physician's lien may be impressed are only those that come within the express terms of the statute. Once it becomes clearly established that the lien right attaches, the statute's enforcement provisions are to be accorded a liberal construction.

Id. ¶ 14 (footnotes omitted).

¶25 However, in Balfour v. Nelson, 1994 OK 149, 890 P.2d 916, the Court stated the legislative intent of § 46 is to ensure that physicians are encouraged to provide medical services to those who may be unable to pay for those services and to ensure physicians receive compensation for the medical services they provide to their patients. In Balfour, the dispute before the Court arose from the interpretation of § 46(D), which states, in part: "The liens provided for in this section may be enforced by civil action in the district court of the county where the lien was filed. Such an action shall be brought within one (1) year from the time of the filing of the lien with the county clerk." 1994 OK 149, ¶ 6. In holding that the one-year limitations bar did not apply in a circumstance where the physician filed the medical service lien within one year of providing medical services but who did not seek to enforce the lien until more than a year after the filing of the lien, the Court stated:

It is apparent that the legislative intent of § 46 was to encourage physicians to provide medical services to persons who have been injured by another and have insufficient funds or insurance to pay for the services when delivered. We also believe that § 46 was designed to insure that physicians are paid for their services once their patients are compensated for their injuries. Conversely, we do not believe that the legislature intended to require physicians to sue their patients yearly to foreclose their liens, particularly where treatment is ongoing. Such a procedure would impose additional expenses in the form of court costs and attorney fees to patients who are already financially strapped, in addition to placing an undue strain upon the physician-patient relationship.

Balfour, ¶ 11.[5]

 

¶26 The evident legislative purpose of § 46(C) is to give notice to the patient and to third parties of the amount claimed for medical services provided to the patient and to provide a lien to medical services providers either on proceeds from litigation or, as in the present case, from an interested insurance company; that is, the tortfeasor's insurance company or the patient's own insurance company (e.g., in the case of UM coverage the patient may have). The pre-2018 amendment to § 46(C) that required an "itemized" statement stood in the way of the legislative purpose of the medical service lien statute because it required the physician or other medical service provider to contravene federal laws concerning patient privacy. Such a requirement could discourage providers from offering medical services to patients who otherwise could not afford to pay for them and could place a strain upon the physician-patient relationship, if, for example, the patient was forced to consent to public disclosure of his or her medical information, not simply disclosure of that information to an insurance company or a tortfeasor.

 

¶27 Consequently, we conclude the 2018 amendment to § 46(C) applies retrospectively pursuant to the Legislature's intent to remedy problems existing prior to the amendment. To decide otherwise would thwart, rather than further, the purpose of the medical services lien statute and the broad public policy goals that underlie it.

B. Omission of a Statement from the Lien Notice

¶28 The question remains, however, whether Accident Care's failure to attach "a statement of the amount claimed," not just the dollar amount claimed, makes Accident Care's lien ineffective. CSAA claims the lien is procedurally deficient and, therefore, Accident Care "did not establish a security interest against the settlement between CSAA and [Mr. Hudson.]" Accident Care argues the 2018 amendment of § 46(C)(1) that now requires a "statement" of the amount claimed would be undermined by CSAA's argument that under the amended language something more than the amount claimed is required to perfect the lien. Accident Care offers two reasons why its lien should not be considered procedurally deficient. It maintains it had a right to amend the lien, but also argues no amendment was needed because of the 2018 amendment. We conclude the lien is procedurally deficient because no statement of any kind was attached to the lien notice, only the amount claimed; however, on remand Accident Care may move to amend its lien and provide the required statement.

¶29 Although Accident Care maintains it had a right to amend the lien, it argues no amendment was required because the 2018 amendment to § 46(C)(1), in effect, amended its lien. While the word "itemized" was removed from the 2018 amendment to § 46(C), the amended statute does not state the written notice, to be effective, must simply set forth "the amount claimed." The statute requires a "statement" of the amount claimed. "It is presumed that the Legislature has expressed its intent in a statute and that it intended what it so expressed." Minie v. Hudson, 1997 OK 26, ¶ 7, 934 P.2d 1082 (footnote omitted). "The words of a statute will be given their plain and ordinary meaning unless it is contrary to the purpose and intent of the statute when considered as a whole." Stump v. Cheek, 2007 OK 97, ¶ 9, 179 P.3d 606 (footnote omitted). Courts "will not assume that the Legislature has done a vain and useless act. Rather it must interpret legislation so as to give effect to every word and sentence." Sequel Youth & Family Services LLC v. Ayisi, 2018 OK CIV APP 7, ¶ 22, 413 P.3d 107 (citation omitted). Here the word "statement" was not inserted accidentally into the statute; it was never removed though the Legislature had the opportunity to do so when it removed the word "itemized." Cf. Chickasaw Nation v. United States, 534 U.S 84, 85 (2001) ("The canon requiring a court to give effect to each word 'if possible' is sometimes offset by the canon permitting a court to reject words as mere surplusage if inadvertently inserted or if repugnant to the rest of the statute."). While the amended statute offers no specific guidance as to what information the lienholder should provide, the required statement is at least something less than an itemized statement.

¶30 Accident Care argues the reason for the 2018 amendment was the Legislature's effort to address the problem of the public filing of an itemized statement of a patient's confidential medical information because such an itemized filing pursuant to former § 46(C)(1) contravened federal Health Insurance Portability and Accountability Act (HIPAA) requirements.[6] We agree the amendment appears to be a legislative effort to avoid HIPAA violations. However, because the statute retains the word "statement," we do not agree the Legislature intended that only a claimed amount without further statement is sufficient to perfect the lien or sufficient to give the notice the lien is intended to give to the patient and to others. A statement that is not in violation of HIPAA regulations, then, is still required to make the lien effective.

¶31 Accident Care also argues it was not required to amend its lien because CSAA was aware of the amounts it was claiming and the services it claimed it provided. It argues CSAA's attempt to claim that the lack of a statement is fatal to its medical service lien is merely "an attempt to create a technical problem." While the lack of a statement may be a "technical problem, we cannot ignore the statutory requirement. On the other hand, we agree with Accident Care that a properly filed motion to amend may cure the deficiency in the lien notice.

¶32 In arguing it is not required to amend its lien, Accident Care relies on Knapp v. Arko Interstate Electric Co., 1968 OK 183, 448 P.2d 996. The Knapp Court held that even though the lienholder failed to provide written notice to the owner of the property prior to commencement of an action to enforce the lien as required by the materialmen's lien statute, the lien was still enforceable if the owner was caused no detriment or prejudice. Id. ¶ 24. In the present case, Accident Care argues no detriment was caused to CSAA because prior to the commencement of this action, CSAA was aware of Mr. Hudson's medical bills and the services he was provided. It asserts this knowledge is evidenced through the notes of CSAA's claims representative and a letter from CSAA to Accident Care disputing the amount of Accident Care's claimed lien.

¶33 However, Accident Care's argument overlooks a significant factual difference in that case. In Knapp, the Court stated:

The failure of a party who has filed a lien statement as provided [[by statute] to serve upon the owner of the property involved a written notice of the filing of such lien statement as provided in [the] statute, prior to the commencement of an action in which it is sought to establish and enforce such lien, will not preclude the establishment and enforcement of the lien where, between the time of the filing of the lien statement in the office of the court clerk and the time of the commencement of the action to establish and enforce the lien, the owner of the property has made no payment to, or for, the contractor and has suffered no detriment or prejudice as a result of such failure.

Knapp, ¶ 0 (Syllabus by the Court). Unlike the circumstances in Knapp, here the medical service lien was not effective because, from the uncontroverted record provided, no statement was made part of Accident Care's written notice. That CSAA may have subsequently become aware of the required information -- had notice the owner in Knapp did not have at the commencement of the lawsuit to enforce the properly filed lien -- does not support Accident Care's argument that it was not required to properly file its medical services lien.

¶34 The need for a properly filed lien was explained in Gaddis-Walker Electric Co., Inc. v. Phillips Petroleum Co., 1974 OK CIV APP 11, 526 P.2d 964 (Approved for Publication by Supreme Court). There the Court addressed the issue of whether an owner of the subject land and the owner for whom the improvements were being made had to be named on the subcontractor's lien statement as required by the materialmen's lien statute. In holding that it was, the Court explained as follows:

The lien sought to be impressed by [the subcontractor] is one solely of statutory creation. It is designed to afford laborers and materialmen secondary protection against loss if primary contractual rights prove ineffective. But to secure the statutory benefits its provisions must be substantially complied with.

Reduced to its simplest form [the statute] provides that a subcontractor "may obtain a lien" upon the "land, or improvements, or both . . . in the same manner . . . [and] extent as the original contractor" for the amount due him for work done. How may he "obtain a lien"? By within 90 days after the last work done filing with the court clerk a verified statement setting forth (1) an itemized account of the amount due from the contractor; (2) the name of the owner of the property interest against which a lien is claimed; (3) the name of the contractor; (4) the name of the claimant; and (5) a description of the property upon which a lien is claimed. Written notice of this statement's filing shall be served upon the owner against whose estate or interest the lien is claimed.

. . . .

The statute, to be sure, should be liberally construed to effectuate its obvious intent and purpose, but in so doing we cannot amendatorily ignore the clearly stated conditions precedent to creating the lien it authorizes, the very first of which is the filing of a lien statement bearing the owner's name whose property is to be impressed with the claimed lien.

Phillips Petroleum, ¶¶ 15-16 & 21 (citations omitted).

¶35 Accident Care argues that in Liberty Plan Co. v. Francis T. Smith Lumber Co., 1961 OK 30, 360 P.2d 500, the Court recognized that a deficient lien (one to which an itemized statement had not been attached pursuant to the materialmen's lien statutes) will not "operate to vitiate the right to a lien, nor render the claim fatally defective" if "[b]y an appropriate amendment such itemized statement [is] supplied either before or during trial[.]" Id. ¶ 9 (citations omitted). However, Accident Care made no such amendment. Nothing in the record reveals that any statement was attached to Accident Care's lien. Whether CSAA subsequently had access to that information does not alter the statute's express language that the medical service lien is not effective without a statement attached to the lien.

¶36 Consequently, under the express requirement of § 46(C)(1), we conclude Accident Care's lien is ineffective because it does not contain a statement of the amount claimed but merely the dollar amount of its lien. However, while summary judgment was improperly granted to Accident Care, we further conclude Accident Care may on remand, by appropriate motion, move to amend its lien and provide the required statement.

II. Amount Claimed Versus Amount Due

¶37 Although we have concluded Accident Care's lien is ineffective in this case, though remediable by amendment, we further address the issues raised by the trial court's grant of summary judgment. Even if the lien is effective pursuant to § 46(C) as to the "amount claimed," the question remains whether, as CSAA argues, Mr. Hudson or it on behalf of Mr. Hudson has a right to challenge the "amount due" on that claim pursuant to § 46(B). We conclude that where the amount due is challenged by one who asserts a legal right to make that challenge, summary judgment is inappropriate if controverted material facts are present regarding that amount due or the basis for the right to challenge. We further conclude that in the present case, CSAA has the legal right to challenge the amount due if Mr. Hudson assigned to CSAA his right to challenge the amount due. Thus, to the extent the purported assignment and the amount due are disputed, questions of material fact arise that preclude the grant of summary judgment.

¶38 Accident Care argues the 2018 amendment of § 46(C)(1) that now requires a "statement" of the "amount claimed" would be undermined by CSAA's argument that under the amended language of § 46(C)(1) the medical service provider must prove, if challenged, the amount due before the insurer or the patient is required to pay "the amount due" pursuant to § 46(B). In other words, Accident Care argues that the removal of the word "itemized" from § 46(C)(1) means no proof or fact finding is required to determine if the statement of the amount claimed is the "amount due" for purposes of § 46(B). Yet, Accident Care acknowledged during the hearing that the patient could challenge that amount.

¶39 As argued by CSAA, it is Accident Care's burden, as the moving party, to present the undisputed material facts that show its entitlement to judgment as a matter of law. CSAA points to Accident Care's failure to attach to its motion for summary judgment any statement of the services it provided to Mr. Hudson and the costs associated with those services. CSAA asserts Accident Care has failed to establish the debt, citing Hedlund v. Brogan, 1934 OK 122, ¶ 0, 30 P.2d 164 (Syllabus by the Court) ("A district court is without authority of law to render a judgment establishing and foreclosing a lien until a debt is established or admitted, the right to a lien being dependent upon the existence of a debt." (action to recover judgment on a contract for labor performed and materials supplied)). More recently, in Cashway Lumber Co. v. Langston, 1970 OK 206, 479 P.2d 582, in which several subcontractors sought to foreclose their liens and recover amounts due for materials and services against the contractor and owner of the property, the Oklahoma Supreme Court reversed the trial court's award of damages to three of the four subcontractors because they failed to prove the amount claimed in the lien. The Court explained:

The [owners'] argument against [all but one of the lien-claimants] is well taken. The testimony of these claimants' witnesses in fact established nothing more than that the lien statements had been publicized, mailed, and filed according to legal procedure. There was no testimony whatsoever from any witness that these claimants had in fact actually supplied the materials and services whose unpaid bills constituted the substantive debts allegedly underlying the lien statements. Nor could the lien statements themselves be proof of the underlying debts; for while the statements are competent and introducible for the purpose of demonstrating that they had in fact been properly filed and perfected, they are clearly incompetent to demonstrate or prove the alleged debts underlying the lien statements. 

Cashway Lumber, ¶ 10 (emphasis added) (citations omitted).

¶40 Accident Care does not challenge the authorities asserted by CSAA that the amount due is a factual matter that Accident Care must prove and, thus, is a question of fact either party has a right to have a jury decide.[7] While the authority upon which CSAA relies concerns other types of liens (i.e., mechanics and materialmen's liens, laborer's liens, and mortgages), they are like a medical service lien in that the lien represents a security interest. See 42 O.S. § 1 (lien is defined as "a charge imposed upon specific property, by which it is made security for the performance of an act."). The lien is not itself a judgment or final determination of the parties' rights.[8] Thus, while Accident Care's lien may, upon amendment, be effective pursuant to § 46(C)(1) -- that is, it has shown it has a right to foreclose the lien -- like other lienholders, it must also prove the amount due in its action to enforce and foreclose that lien. We have found no authority supportive of Accident Care's claim that whatever amount it claims in its § 46(C)(1) lien notice, that claimed amount is not required to be proved, if challenged, as the amount due under, in this case, § 46(B).[9]

 

¶41 As argued by CSAA, only the lien notice setting forth the claimed amount is attached to Accident Care's motion, but no evidentiary materials are offered in the summary judgment record that prove the amount claimed is the correct amount due. Unlike the circumstances in Broadway and Balfour, where the correctness of the debt -- the amount owed -- was not at issue, here, CSAA argues it is challenging the amount claimed in the lien notice and the amount due.

 

¶42 Accident Care argues this omission from its motion is irrelevant. It argues CSAA was aware of the services rendered and the amounts claimed for those services because CSAA could not otherwise have determined what it thought was a reasonable amount for those services. Those facts as to services rendered and amounts charged, however, are not in the record. Moreover, the trial court did not find Accident Care was entitled only to the amount CSAA determined was reasonable; instead, it awarded Accident Care that amount plus the $950 paid to Mr. Hudson. That is, the trial court rendered judgment for Accident Care without any proof of the debt owed.

¶43 Accident Care further maintains, however, that while the patient may challenge the amount claimed by the medical lienholder, CSAA may not. Instead, Accident Care argues, in a contest between the patient and the insurance company as to the "amount due," the insurer must interplead the funds the insurer determines is payable under the policy and allow the court to determine what is owed to the lienholder. CSAA argues it has a right to challenge the correctness of the debt because it is required to pay the debt.[10] It also argues that in communications between Mr. Hudson and CSAA and by his act of signing the release, Mr. Hudson assigned to it "his right to contest [Accident Care's] lien and to challenge the amount owed to [Accident Care] for the services it rendered." Accident Care asserts this argument "is an empty shibboleth devoid of any factual basis." It points to paragraphs in the release that state Mr. Hudson agrees to defend, indemnify, and hold harmless CSAA against any liens and that state Mr. Hudson acknowledges is liability "for medical expenses incurred" and "agrees to distribute all funds received" to satisfy "medical expenses . . . as a result of the accident[.]"

¶44 As Accident Care argues, there is no express statement of an assignment of rights in the release. However, the release states, in part, that Mr. Hudson acknowledges receipt of payment for "($950.00) made payable [to him] and an undetermined amount for Physical Therapy owed to medical provider -- [Accident Care], which payment is accepted in full compromise, settlement and satisfaction of, and as sole consideration for the final release and discharge of all bodily injury" because of the accident with CSAA's insured. A letter dated February 6, 2018, to Mr. Hudson from CSAA references the "Enclosed . . . Release for your bodily injury claim prepared in the amount of $950.00 exclusive of [Accident Care's] lien as we discussed in our recent conversation." No other evidentiary material concerning a purported assignment of Mr. Hudson's rights to contest the amount due is attached to CSAA's response in objection to the motion or to its motion for rehearing. However, taking the undisputed facts in the light most favorable to CSAA, we conclude the February 6, 2018 letter referencing conversations between CSAA and Mr. Hudson about amounts yet to be paid to Accident Care on its lien coupled with the release language in which Mr. Hudson acknowledged receipt of the $950 "and an undetermined amount" owed to Accident Care, raise an inference that Mr. Hudson expressed an intention to CSAA to allow CSAA to challenge, on his behalf, the amount due to Accident Care.[11]

 

¶45 We, thus, conclude the trial court erred in granting summary judgment to Accident Care because it failed to provide an evidentiary basis for the debt it claims it is owed and thus failed to establish as a matter of law the amount due, and because a question of material fact remains about whether Mr. Hudson assigned to CSAA his right to challenge the amount Accident Care claims is the amount due.

 

III. Monies Payable by Insurer

¶46 CSAA also urges as an issue on appeal "[w]hether an insurance company must list a lienholder as a payee on a check issuing policy funds to a third-party claimant."[12] As previously noted herein, § 46(B) provides that in the circumstance where the claim is maintained by the injured party against an insurer, the medical service provider "shall have . . . a lien for the amount due for such medical or healing arts services upon any monies payable by the insurer to the injured person." CSAA offers no authority for its position as a general matter, but more significantly offers no argument relating to the requirement of § 46(B) that the medical services provider shall have a lien for the amount due upon any monies payable by the insurer to the patient. We conclude that if an insurer has paid money on a third-party claim to a patient and challenges the "amount due" on behalf of the patient, the insurer, not the medical service provider, bears the risk of seeking indemnification from the patient if the amount due is eventually determined to include amounts paid by the insurer to the patient.

¶47 The trial judge expressed concern about CSAA's payment of $950 to Mr. Hudson. While at this stage of the proceeding the amount due under Accident Care's lien has yet to be proved, the trial court implicitly determined that CSAA's payment of money to Mr. Hudson circumvented the legislative intent of § 46(B). That intent is assure that those who provide medical services to patients have a source of payment for those services when the patient receives money from an insurer for the injuries associated with those medical services.

¶48 We agree with the trial court's interpretation of the language in § 46(B). As previously noted, in circumstances such as the present where a third party makes a claim against an insurer, the lien for the amount due for such medical services shall be "upon any monies payable by the insurer to the injured person." The legislative intent of this remedial statute, as discussed in Broadway and Balfour, is to encourage the providing of medical services to people who are uninsured or under insured and to ensure funds are available to those medical service providers. If we were to interpret the statutory language to require the medical service provider to sue the patient for funds the insurer paid to the patient, the provider/patient relationship could be detrimentally affected. Cf. Balfour, 1994 OK 149, ¶ 6. Placing that burden on the provider could delay payment of proven amounts due to the provider and could even result in the provider being required to pursue funds from a judgment proof patient. Further, in circumstances like the present -- where the insurer challenges the amount of the debt, the "amount due," on behalf of the patient -- the insurer bears the risk that amounts paid to the third-party claimant (e.g., Mr. Hudson) include amounts that may eventually be determined to be the amount due to the lienholder (e.g., any amount beyond the $1,276.16 CSAA asserts it is holding to pay Accident Care). Thus, in a circumstance such as the one presented here, CSAA bears the burden of pursuing indemnification from the injured patient should Accident Care establish its debt exceeds the sums CSAA asserts is the amount due.

CONCLUSION

¶49 We conclude the trial court erred in granting summary judgment to Accident Care because, as filed, the lien is ineffective, and controverted questions of material fact remain concerning the amount due to Accident Care on its medical service lien and concerning what agreement may exist between Mr. Hudson and CSAA to challenge the amount due on his behalf. Accordingly, we reverse and remand for further proceedings.

¶50 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

FISCHER, J., concurs, and RAPP, J., concurs specially.

RAPP, J., concurring specially:

I concur specially to note that the original statute may have violated the Federal HIPAA law. However, I believe the Opinion resolves this issue while preserving the statute.

FOOTNOTES

[1] Accident Care's amended petition included a claim for tortious interference with contractual relations. That claim -- the only remaining claim -- was dismissed without prejudice after the trial court's order granting partial summary judgment.

[2] CSAA argues the court should deny the motion because depositions had yet to occur though notice was given and Accident Care had not responded to its discovery requests. In an affidavit accompanying its Rule 13(d) request, CSAA listed ten facts the affiant averred are relevant to its defense and have yet to be discovered pertaining to the reasonableness of the amount claimed by Accident Care's lien.

[3] The trial court case numbers for these cases made companion cases on appeal by Order of the Oklahoma Supreme Court are, respectively, CJ-2019-2907, CJ-2019-2908, CJ-2019-1632, and CJ-2019-1633.

[4] Although Accident Care framed CSAA's motion for rehearing as a motion of new trial, the substance of CSAA's motion was one to amend its response to Accident Care's motion for summary judgment and it incorporated by reference its response in objection to the motion for summary judgment. CSAA asserts the trial court addressed an issue at the hearing that had not been raised in Accident Care's motion, one the trial court apparently found decisive, and one, therefore, it asked the court to allow it to address. CSAA addressed the issue and Accident Care filed a brief in response. The trial court apparently did treat the motion as one to supplement CSAA's response in objection to summary judgment and decided the motion without further hearing pursuant to Rule 4(h). That denial and the trial court's grant of summary judgment to Accident Care are in the Judgment. Consequently, we apply the appellate standard applicable to summary judgment review.

[5] A statute may also be determined to have retrospective application where only remedies and not substantive rights are affected. See, e.g., State ex rel. Crawford v. Guardian Life Ins. Co. of America, 1997 OK 10, ¶ 12, 954 P.2d 1235. "[S]tatutes affecting procedure only may be applied retroactively. A procedural change is one that affects the remedy only, and not the right." Walls v. American Tobacco Co., 2000 OK 66, ¶ 24, 11 P.3d 626 (citation omitted). "[R]emedial or procedural statutes which do not create, enlarge, diminish, or destroy vested rights may operate retrospectively, and apply to pending actions or proceedings[.]" State v. Shade, 2017 OK CIV APP 68, ¶ 8, 407 P.3d 790 (citation omitted). "Statutes relating only to remedies or modes of procedure generally are held to . . . apply to pending actions or proceedings unless operation or application would adversely affect substantive rights." Id. ¶ 11 n.4 (citation omitted). See generally Shade, ¶ 11 & n.4 and cases cited therein. The 2018 amendment qualified what must be filed; a statement of the amount claimed rather than an itemized statement of the amount claimed. Accident Care's substantive rights are not adversely affected by the amendment because it must still file a statement of the amount claimed. Applying the 2018 amendment retrospectively does not deny Mr. Hudson's or CSAA's substantive rights because notice of the lien is still required and as discussed later in this Opinion, the medical service lienholder must still prove, if challenged, the amount due.

[6] It relies for this argument on a letter issued on July 18, 2017, by the then presiding judge for the Seventh Judicial District, State of Oklahoma, apparently addressed to a legislator or to a body that brings matters of concern to the courts to the attention of the legislature. The presiding judge explained that to avoid contravention of HIPAA requirements, "some district judges are requiring a simple itemized statement of the bill from the medical provider to the patient which would include redactions if various medical procedures or treatments are on said itemized statement[.]" He explained further, "that if someone is objecting to the medical provider's lien with the redacted itemized billing statement attached, a hearing could be held and a more specific statement and records for the patient's medical treatment could be provided."

[7] In Scott v. Jones-Everett Machine Co., 1921 OK 292, 200 P. 168, the Oklahoma Supreme Court determined that "[i]n an action to recover judgment on an account for labor performed or material furnished by plaintiff, and to foreclose a mechanic's or materialman's lien, where [the] issue is joined as to the indebtedness due, either party is entitled to a trial by a jury, as a matter of right." Id. ¶ 0 (Syllabus by the Court). In Scott, the plaintiff's demand for a jury trial was denied. The Supreme Court held the denial of a jury trial was error because the case was one for the recovery of money and the "correctness of the account" was in issue. Scott, ¶ 1 (citations omitted). As previously stated herein, in Hedlund, the Court determined that "[a] district court is without authority of law to render a judgment establishing and foreclosing a lien until a debt is established or admitted, the right to a lien being dependent upon the existence of a debt." 1934 OK 122, ¶ 0 (Syllabus by the Court). Although in Hedlund the existence of the oral contract for labor and materials giving rise to the claim of a lien was itself at issue, the Court noted the requested relief was a money judgment and attorney fees as well as the declaration of a lien and foreclosure of that lien. Id. ¶ 2. The Court determined the district court erred in discharging the jury at the conclusion of the evidence and rendering judgment for plaintiff for the amount claimed. The Court stated, "The action was primarily to recover a judgment for an amount due under a contract" and "[a]n issue of fact was presented"; thus, "the trial court was without authority of law to discharge the jury and render the judgment complained of." Id. ¶ 5. The Court further determined "[i]t is contended herein by the defendant that the primary purpose of the action was the establishment of a lien. The defendant was in error therein. The primary purpose was the establishment of a debt. Until that debt was established there could be no lien for a debt." Id. ¶ 6 (citations omitted). See also Holmes v. Halstid, 1919 OK 262, ¶ 0, 183 P. 969 (Syllabus by the Court) ("In an action to recover judgment on promissory notes executed by defendants and for foreclosure of mortgage lien, made to secure their payment, where issue is joined as to the indebtedness due, the case is one properly triable before a jury[.]"). Contra Maas v. Dunmyer, 1908 OK 122, ¶ 0, 96 P. 591 (Syllabus by the Court) ("In an action for foreclosure, where a defendant, against whom no money judgment is sought, by cross-petition in his answer sets up a defense and alleges a cause of action involving the application of equitable doctrines, and seeks relief that only a court of equity can give, such defendant is not entitled to a jury trial on the issues raised by his cross-petition.").

We discern no difference between a medical service lien in which the amount due or correctness of the amount claimed is at issue from other liens in which the amount due or the correctness of the amount claimed or the very debt itself is at issue. Here, CSAA has put at issue the amount due or the correctness of the amount claimed by Accident Care in its lien claim. We conclude the determination of that issue is a fact issue to which either party has a right to jury trial.

[8] Persuasive on this point is Question Submitted by: The Honorable Leo Winters, State Treasurer, 1983 OK AG 203, 115 OK OP ATTY GEN 369. In answer to a question of whether a materialmen's lien is a judgment, the Attorney General opined:

By statute, mechanics and materialmen who furnish materials or construct improvements for real estate are allowed liens on the property benefitted. The lien must be filed within four (4) months after the service or material is provided. After the filing of the lien statement, the lienholder must bring an action to enforce and foreclose his liens much like a mortgage holder. If such an action is not brought within this period of time, the lien is extinguished by operation of law. The mere filing of a lien does not constitute a "final determination of the rights of the parties[.]"

1983 OK AG 203, ¶ 19 (citations omitted). Similarly, a medical service lien filed pursuant to § 46 must be filed within the statutory period set forth in subsection D, and the lienholder's right to enforce the lien may be pursued in the district courts; thus, like materialmen's lien, the lien statement is not itself a final judgment and determination of the parties' rights.

[9] No language in § 46 supports Accident Care's position. Both subsections A and B provide, respectively, that a physician or medical service provider "shall . . . have a lien for the amount due" in two circumstances: "if the injured person asserts or maintains a claim against such other person for damages on account of such injuries," or "if the injured person asserts or maintains a claim against an insurer[.]" In the circumstance where the claim is maintained by the injured party against an insurer, the lien for the amount due for such medical services shall be "upon any monies payable by the insurer to the injured person." As previously discussed herein, subsection C specifies the notice the medical service provider must file, including "a statement of the amount claimed," and to whom it must send notice to make the lien effective. In addition to setting the limitations applicable to medical liens, § 46(D) provides "[t]he liens provided for in this section may be enforced by civil action in the district court of the county where the lien was filed." None of these subsections states the lienholder is not required to prove the amount due if challenged.

[10] CSAA argues it has a right independently to challenge the "amount due" because it was sued by Accident Care to enforce its lien; consequently, Accident Care must prove the amount due. CSAA references no authority for its position that a third party has an independent right to contest the amount claimed by the lienholder as the amount due if the party to whom medical services were provided does not contest the claimed amount. CSAA also argues, however, that under its insurance policy with its insured -- not Mr. Hudson -- it is only obligated to pay damages for bodily injury for which an insured becomes obligated to pay. It argues, had Mr. Hudson sued its insured under § 46(A), CSAA would only be obligated to pay Mr. Hudson's damages as defined by the Oklahoma Uniform Jury Instructions No. 4.1; that is, among other things, "[t]he reasonable expenses of the necessary medical care, treatment, and services, past and future." The present appeal, however, does not concern a situation involving § 46(A). As noted by the Court in Broadway, § 46(B) is different from and in addition to § 46(A). 2006 OK 29, ¶ 17. We, therefore, do not base our decision on that theory of recovery.

[11] We make no determination that the evidence CSAA may produce will prove the existence of such an intention.

[12] (Emphasis omitted.)






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions
 Cite
Name
Level

 1983 OK AG 203, Question Submitted by: The Honorable Leo Winters, State Treasurer
Discussed
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 1974 OK CIV APP 11, 526 P.2d 964, GADDIS-WALKER ELEC. CO. v. PHILLIPS PETROLEUM
Discussed
 2017 OK CIV APP 68, 407 P.3d 790, STATE v. SHADE
Discussed
 2018 OK CIV APP 7, 412 P.3d 107, SEQUEL YOUTH & FAMILY SERVICES LLC v. AYISI
Cited
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 1994 OK 149, 890 P.2d 916, 65 OBJ 4173, Balfour v. Nelson
Discussed at Length
 1997 OK 10, 954 P.2d 1235, 69 OBJ 469, Crawford v. Guardian Life Insurance Company of America
Discussed
 1997 OK 26, 934 P.2d 1082, 68 OBJ 909, Minie v. Hudson
Discussed
 1919 OK 262, 183 P. 969, 76 Okla. 31, HOLMES et al. v. HALSTID et al.
Discussed
 1961 OK 30, 360 P.2d 500, LIBERTY PLAN CO. v. FRANCIS T. SMITH LUMBER CO.
Discussed
 1908 OK 122, 96 P. 591, 21 Okla. 434, MAAS v. DUNMYER
Discussed
 1934 OK 122, 30 P.2d 164, 167 Okla. 393, HEDLUND v. BROGAN
Discussed at Length
 1921 OK 292, 200 P. 168, 82 Okla. 255, SCOTT v. JONES-EVERETT MACH. CO.
Discussed
 1968 OK 183, 448 P.2d 996, KNAPP v. ARKO INTERSTATE ELECTRIC CO.
Discussed
 1970 OK 206, 479 P.2d 582, CASHWAY LUMBER COMPANY v. LANGSTON
Discussed
 2006 OK 29, 139 P.3d 873, BROADWAY CLINIC v. LIBERTY MUTUAL INSURANCE CO.
Discussed at Length
 2006 OK 46, 139 P.3d 885, BRONSON TRAILERS & TRUCKS v. NEWMAN
Discussed
 2007 OK 97, 179 P.3d 606, STUMP v. CHEEK
Discussed
 2011 OK 72, 258 P.3d 521, SHULL v. REID
Discussed
 2012 OK 18, 277 P.3d 1259, PARRIS v. LIMES
Discussed
 2012 OK 31, 276 P.3d 1017, STATE v. TATE
Discussed
 2016 OK 96, 381 P.3d 717, BLAIR v. RICHARDSON
Discussed
 2000 OK 66, 11 P.3d 626, 71 OBJ 2361, WALLS v. AMERICAN TOBACCO, CO.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 2022, Interpleader
Cited
Title 42. Liens
 Cite
Name
Level

 42 O.S. 1, Definition of Lien
Cited
 42 O.S. 46, Lien for Medical Services
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA